The Alabama Court of Criminal Appeals has transferred to this court the State of Alabama's petition seeking a writ of mandamus ordering a judge of the Madison Circuit Court to vacate a discovery order entered in the criminal actions pending against John Randall Isbell. See Ex parte State ofAlabama, 955 So.2d 476 (Ala.Crim.App. 2006). Because we conclude (1) that we do not have jurisdiction to entertain the State's petition and (2) that the Court of Criminal Appeals does have jurisdiction, we transfer the State's petition back to the Court of Criminal Appeals.
One of the charges pending against Isbell is a misdemeanor charge of driving under the influence ("DUI"). The evidence against him includes the result of a breath-alcohol-analysis test performed with a Draeger-brand device. Isbell pleaded guilty to DUI in the Madison District Court and appealed to the Madison *Page 442 
Circuit Court for a trial de novo. In the circuit court, Isbell filed several discovery motions seeking information concerning the particular Draeger-brand device used to test him, including its "complete history of malfunctions, repairs, or reports of malfunctions." The requested data is stored in computer files in the possession of the Alabama Department of Forensic Sciences ("DFS"). Following a hearing, the circuit court judge entered an order directing the State to "turn over to [Isbell] the complete history of malfunctions, repairs or reports of malfunction on the Draeger Device ARMM-0423." The State then filed with the Court of Criminal Appeals a petition seeking a writ of mandamus ordering the circuit court judge to vacate that order. However, the Court of Criminal Appeals concluded that, under the decisions of the Alabama Supreme Court in Ex parte McNabb, 879 So.2d 1166 (Ala. 2003);Ex parte Smith, 794 So.2d 1089 (Ala. 2001) (opinion on application for rehearing); and Ex parte Galanos,796 So.2d 390 (Ala. 2000), this court was the proper court to entertain the State's petition, and, therefore, it transferred the State's petition to this court. See Ex parte State ofAlabama, supra.
In Galanos, the first of those decisions chronologically, Peter Austin Bush, a Mobile attorney who accepted appointments to defend indigent criminal defendants before the Mobile Circuit Court, had submitted to the circuit court attorney-fee declarations seeking payment by the State for services he had rendered in representing indigent defendants in 11 completed criminal cases. Judge Galanos, the judge of the Mobile Circuit Court designated to review all such declarations during that year, authorized the payment of fees to Bush that were substantially less than those Bush had sought. Bush petitioned the Court of Criminal Appeals for a writ of mandamus directing the Mobile Circuit Court to authorize payment of the amounts he had originally requested, and the Court of Criminal Appeals issued the writ.
Seven judges of the Mobile Circuit Court then petitioned the Supreme Court for a writ of mandamus directing the Court of Criminal Appeals to vacate its writ. The judges argued that Bush's mandamus petition was improper because, they said, he had another adequate remedy available in the form of a civil action pursuant to the Declaratory Judgment Act (§ 6-6-220
et seq., Ala. Code 1975). The Supreme Court agreed. Moreover, the Supreme Court stated:
 "We also note that `properly invoked jurisdiction' — the fifth requisite for obtaining mandamus relief — is absent here. Ala. Const. 1901, Amend. No. 328, § 6.03, establishes the jurisdiction for Alabama's Courts of Appeals. That section provides, in pertinent part:
 "`(c) The court of criminal appeals and the court of civil appeals shall have no original jurisdiction except the power to issue all writs necessary or appropriate in aid of appellate jurisdiction of the courts of appeals.
 "`(d) The court of criminal appeals shall have and exercise original jurisdiction in the issuance and determination of writs of quo warranto and mandamus in relation to matters in which said court has appellate jurisdiction. Said court shall have authority to issue writs of injunction, habeas corpus and such other remedial and original writs as are necessary to give it a general superintendence and control of jurisdiction inferior to it and in matters over which it has exclusive appellate jurisdiction; to punish for contempts by the infliction of a fine . . ., and to exercise such other powers as may be given to said court by law.' *Page 443 
 "Section 12-3-9, Ala. Code 1975, provides that `[t]he Court of Criminal Appeals shall have exclusive appellate jurisdiction of all misdemeanors, including the violation of town and city ordinances, habeas corpus and all felonies, including all post conviction writs in criminal cases.' Clearly, jurisdiction for Bush's mandamus petition was not proper in the Court of Criminal Appeals.
 "On the other hand, § 12-3-10 provides that `[t]he Court of Civil Appeals shall have exclusive appellate jurisdiction of all civil cases where the amount involved, exclusive of interest and costs, does not exceed $50,000 . . . and all extraordinary writs arising from appeals in said cases.' Thus, after litigation in the circuit court, a judgment in a declaratory-judgment action may be appealed to the Court of Civil Appeals.
 "We grant the petition for the writ of mandamus; the writ shall issue to the Court of Criminal Appeals, directing that court to vacate its judgment granting Bush's petition for the writ of mandamus."
796 So.2d at 393 (emphasis added).
In Smith, the second decision chronologically, Lorenzo Smith, an indigent defendant, was charged with capital murder. The State's evidence included a videotaped confession Smith had given officers of the Montgomery Police Department ("the Department") following his arrest, a videotape the Department had made of the crime scene, and a compact disc on which the Department had stored digital photographs of the crime scene. The State granted Smith's attorneys unlimited access to the videotapes and the compact disc. The State also agreed to furnish Smith's attorneys with copies of the videotapes and the compact disc on the condition that Smith's attorneys pay the Department in advance for the cost of copying them. However, Smith's attorneys moved the circuit court to order the State to furnish them with copies free of charge. The circuit court entered an order directing the Department to make copies of the videotapes and the compact disc and to furnish them to Smith's attorneys together with a statement for the Department's copying charges. The circuit court's order further stated that, at the conclusion of the criminal action against Smith, the circuit court would order the payment of the Department's copying charges from the Fair Trial Tax Fund. The State then petitioned the Court of Criminal Appeals for a writ of mandamus ordering the circuit court to vacate its order and to issue a new order directing Smith's attorneys to pay the Department in advance for its copying costs and to obtain reimbursement later in accordance with § 15-12-21, Ala. Code 1975. The Court of Criminal Appeals issued the writ.
Smith then petitioned the Supreme Court for a writ of mandamus ordering the Court of Criminal Appeals to vacate its writ. The Supreme Court quoted the Galanos Court's rationale for its holding that the Court of Criminal Appeals did not have jurisdiction to entertain Bush's mandamus petition and then stated:
 "The Court of Criminal Appeals has no jurisdiction to hear mandamus petitions related to matters not appealable to that court. Galanos. Thus, the State's petition to the Court of Criminal Appeals was defective because of the absence of a prerequisite for a writ of mandamus: `properly invoked jurisdiction.' Id. (and cases cited therein)."
794 So.2d at 1093.
By relying on its previous decision in Galanos, the Supreme Court in Smith suggested that the State's proper remedy for challenging the circuit court's order regarding who should advance the cost of *Page 444 
copying the discoverable material was a declaratory-judgment action, which would be appealable to this court, rather than a petition seeking a writ of mandamus from the Court of Criminal Appeals.[1]
In McNabb, the third and final decision chronologically, Ruben Corey McNabb, an indigent defendant, was charged with robbery. When the jury became deadlocked in his first trial, the circuit court declared a mistrial. Thereafter, McNabb's attorney moved the circuit court to approve in advance his incurring the expense of obtaining a transcript of the first trial to use for rebuttal and cross-examination in McNabb's second trial. The circuit court denied the motion. Moreover, the court reporter subsequently informed McNabb's attorney that the circuit court judge had ordered her not to release the audiotapes of the first trial for use in the second trial. McNabb then petitioned the Court of Criminal Appeals for a writ of mandamus ordering the circuit court to approve payment for the transcript of the first trial. However, the Court of Criminal Appeals concluded on the basis of the Supreme Court's holdings in Galanos and Smith that it did not have jurisdiction to entertain McNabb's petition and transferred it to the Supreme Court. The Supreme Court, however, distinguished its holdings in Galanos andSmith and held that the Court of Criminal Appeals did have jurisdiction to entertain McNabb's petition. The Supreme Court stated:
 "[T]his Court, in Ex parte Smith, 794 So.2d 1089, 1093 (Ala. 2001), applying the rationale of Ex parte Galanos, 796 So.2d 390, 393
(Ala. 2000), held, under the circumstances presented there, that the Court of Civil Appeals was the proper appellate court to issue a writ of mandamus addressing the payment of a defense counsel's fees because the matters in issue were not appealable to the Court of Criminal Appeals. Smith, 794 So.2d at 1093. In Galanos, counsel for several indigent defendants in criminal cases, upon conclusion of his services, applied for payment of attorney fees and for reimbursement of his expenses; he then challenged the trial court's award of those fees and expenses as inadequate. In Smith, the State challenged the trial court's requirement that copies of discovery materials be furnished to the defendant at the expense of the State and contended that counsel should pay in advance and obtain reimbursement later, in accordance with Ala. Code 1975, § 15-12-21. In both Galanos and Smith this Court held that the Court of Criminal Appeals lacked jurisdiction in those cases. Also, in both Galanos and Smith the issues did not implicate the defendants' right to a fair trial. In Galanos, the criminal cases were concluded. In Smith, the defendant was going to receive a copy of the evidence before trial and the issue was whether counsel would be required to advance the costs of the discovery being turned over before the trial and be reimbursed later or whether the State would pay for the copy of such discovery before it was delivered to the defendant.
 "In the posture here presented, the trial court has denied the motion for extraordinary expenses. Presumably, its ruling is simply a refusal to require the State to pay the expense before the trial and does not reach the issue of preapproval of expenses under § 15-12-21 *Page 445 
(d). Nevertheless, this case differs from Smith in that, unlike in Smith, we cannot say, at this stage of the proceedings, that McNabb will have access to the requested materials before the trial.
 "Amendment No. 328, § 6.03(d), Ala. Const. 1901, provides:
 "`The court of criminal appeals shall have and exercise original jurisdiction in the issuance and determination of writs of quo warranto and mandamus in relation to matters in which said court has appellate jurisdiction. Said court shall have authority to issue writs of injunction, habeas corpus and such other remedial and original writs as are necessary to give it a general superintendence and control of jurisdiction inferior to it and in matters over which it has exclusive appellate jurisdiction. . . .'
 "Because the Court of Criminal Appeals has jurisdiction to hear a petition for the writ of mandamus `in relation to matters in which said court has appellate jurisdiction' (§ 6.03), and because the right of a defendant to a fair trial if the requested transcript is not available is an issue as to which that court has appellate jurisdiction, the Court of Criminal Appeals has jurisdiction to deal with the issue presented in McNabb's petition filed before it. . . ."
879 So.2d at 1168-69.
In the matter now before us, the Court of Criminal Appeals reasoned that it did not have jurisdiction to entertain the State's petition because the issue it presented is analogous to the issue presented by the State's mandamus petition inSmith. However, we disagree. The issue presented by the State's mandamus petition in Smith was limited to who should advance the cost of copying discoverable material. No issue was presented regarding who should bear the responsibility for physically copying the discoverable material because the State had agreed to perform the physical copying. In the matter now before us, on the other hand, the primary issue presented by the State's petition is who should bear the responsibility for physically researching, gathering, and copying the discoverable material. The State specifically argues that the Alabama Rules of Criminal Procedure and applicable caselaw prohibit the circuit court judge from imposing upon the State or DFS the responsibility for physically researching, gathering, and copying the data regarding the Draeger-brand device. Thus, the primary issue presented by the State's petition requires a decision regarding the extent of the discovery obligation imposed upon the State by the Alabama Rules of Criminal Procedure and applicable caselaw. That is not an issue for adjudication in a declaratory-judgment action and a subsequent appeal to this court; that is an issue for adjudication by the Alabama Court of Criminal Appeals on a mandamus petition because it falls within that court's appellate jurisdiction. See Ala. Const. 1901, Amend. No. 328, § 6.03(d).
Moreover, we cannot say that a ruling that Isbell is responsible for physically researching, gathering, and copying the data will not effectively deprive him of access to the data. Such a deprivation would require a decision regarding whether it deprived Isbell of a fair trial. Therefore, the matter now before us is analogous to McNabb rather than Smith.
Therefore, because the primary issue presented by the State's petition is one that falls within the appellate jurisdiction of the Court of Criminal Appeals and because we cannot say that the adjudication of the primary issue presented by the State's petition will not affect Isbell's right to a fair trial, we conclude that the Court *Page 446 
of Criminal Appeals has jurisdiction to entertain the State's mandamus petition, and, therefore, we transfer it back to the Court of Criminal Appeals.
PETITION TRANSFERRED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.
[1] In his special writing in Smith, however, Justice Johnstone pointed out the impracticability of such a declaratory-judgment action. 794 So.2d at 1093 (Johnstone, J., concurring in the judgment but dissenting from the rationale, and concurring to overrule the application for rehearing).