985 So.2d 446 (2007)
Ex parte State of Alabama.
(In re STATE of Alabama
v.
John Randall ISBELL).
1061115.
Supreme Court of Alabama.
November 30, 2007.
*447 Tim Morgan, district atty., and Jay E. Town, asst. district atty., Huntsville, for petitioner.
Phillip B. Price Sr., of Price & Flowers Law Firm, P.C., Huntsville, for respondent.
Mary A. Rhodes, Alabama Department of Forensic Sciences, for amicus curiae Alabama Department of Forensic Sciences, in support of the petitioner.

On Application for Rehearing
PER CURIAM.
This Court's opinion of August 24, 2007, is withdrawn, and the following is substituted therefor.
The State of Alabama petitions this Court for a writ of mandamus directing the Madison Circuit Court to set aside its order requiring the Department of Forensic Sciences ("DFS") to "turn over to [John Randall Isbell, the defendant in a criminal proceeding before the circuit court,] the complete history of malfunctions, repairs or reports of malfunction on the Draeger Device ARMM-0423." The State contends that this order requires it to research, inspect, identify, copy, assemble, and make arrangements to deliver voluminous documents to Isbell. For the reasons discussed below, we grant the petition. In resolving the question presented by this petition, we also resolve a recurring jurisdictional question applicable to petitions for extraordinary writs in criminal proceedings.

*448 I. Procedural History

On January 20, 2004, Isbell was arrested for driving under the influence of alcohol ("DUI") and for failing to yield the right-of-way. He was administered a breath-alcohol-analysis test using a Draeger brand device. The test revealed Isbell's blood-alcohol level to be .22. Isbell pleaded guilty in the Madison District Court to DUI and to failing to yield the right-of-way. He appealed to the Madison Circuit Court for a trial de novo. Isbell then filed several discovery motions requesting information concerning the "Draeger Device [the machine used to test breath for alcohol content], its complete history of malfunctions, repairs or reports of malfunctions." After a hearing, the circuit court granted Isbell's discovery request.
On July 24, 2006, the Madison County district attorney filed a petition for a writ of mandamus in the Court of Criminal Appeals, seeking a writ directing the circuit court to vacate its discovery order. DFS filed an amicus curiae brief in support of the district attorney's petition. Isbell filed a motion to strike DFS's amicus brief. The Court of Criminal Appeals denied Isbell's motion and stayed the proceedings in the circuit court.
On October 20, 2006, the Court of Criminal Appeals transferred the petition to the Court of Civil Appeals. State v. Isbell, 955 So.2d 476 (Ala.Crim.App.2006). After considering three cases from this Court dealing with appellate jurisdiction in proceedings arising from criminal cases  Ex parte McNabb, 879 So.2d 1166 (Ala.2003); Ex parte Smith, 794 So.2d 1089 (Ala.2001); and Ex parte Galanos, 796 So.2d 390 (Ala. 2000)  the Court of Criminal Appeals reasoned that it lacked jurisdiction over the petition because Isbell's right to a fair trial was not implicated, the parties agreed that he was entitled to the requested information, and the only issue was whether DFS or Isbell would bear the costs and responsibility of collecting and copying the data.[1]
On February 23, 2007, the Court of Civil Appeals transferred the petition back to the Court of Criminal Appeals. After analyzing the same three cases from this Court considered by the Court of Criminal Appeals in its opinion transferring the petition, the Court of Civil Appeals reasoned that a retransfer was appropriate because
"the primary issue presented by the State's petition requires a decision regarding the extent of the discovery obligation imposed upon the State by the Alabama Rules of Criminal Procedure and applicable caselaw. That is not an issue for adjudication in a declaratory-judgment action and a subsequent appeal to this court; that is an issue for adjudication by the Alabama Court of Criminal Appeals on a mandamus petition because it falls within that court's appellate jurisdiction. See Ala. Const. 1901, Amend. No. 328, § 6.03(d)."
State v. Isbell, 985 So.2d 441, 445 (Ala.Civ. App.2007).
On April 11, 2007, the presiding judge of the Court of Criminal Appeals petitioned this Court to accept the transfer of this case pursuant to § 12-3-14, Ala.Code 1975, for resolution of the jurisdictional question. On April 19, 2007, this Court ordered the petition to be transferred to it for hearing and final determination.

II. The Jurisdictional Question
In Ex parte Galanos, we held that a proceeding after the conclusion of the criminal case seeking payment of attorney fees for representing an indigent defendant was a civil matter as to which the *449 Court of Criminal Appeals did not have appellate jurisdiction. 796 So.2d at 393. In Ex parte Smith, the State and the defendant disagreed over whether a videotape containing the defendant's confession should be paid for in advance by the defendant subject to a claim for reimbursement or delivered to the defendant without charge. The defendant filed a petition for a writ of mandamus in this Court, asking us to vacate a writ of mandamus issued by the Court of Criminal Appeals directing the circuit court to vacate its order requiring that the defendant be provided a free copy of the videotape. We held that the defendant's petition for a writ of mandamus fell within the jurisdiction of the Court of Civil Appeals because the Court of Criminal Appeals did not have jurisdiction over an appeal as to a monetary dispute. We therefore issued the writ of mandamus and directed the Court of Criminal Appeals to vacate the writ it had issued. 794 So.2d at 1092-93.
Justice Johnstone dissented from the rationale in Ex parte Smith, noting:
"Amendment 328, § 6.03, Alabama Constitution of 1901, ... provides, in pertinent part, that the Court of Criminal Appeals has original jurisdiction `in the issuance and determination of writs of... mandamus in relation to matters in which said court has appellate jurisdiction.' This capital murder case was a `matter[ ] in which said court has appellate jurisdiction,' and the dispute over this circuit court production order at issue was `in relation to' that very matter."
794 So.2d at 1093 (Johnstone, J., concurring in the judgment but dissenting from the rationale) (emphasis added). Justice Johnstone was correct in that, at the time the petition was pending in Ex parte Smith, there was an ongoing criminal prosecution and any appeal would go to the Court of Criminal Appeals. Consequently, Ex parte Smith involved the issuance of a writ of mandamus in relation to a matter as to which the Court of Criminal Appeals had appellate jurisdiction. We therefore expressly overrule Ex parte Smith, and, in so doing, we hold that the Court of Criminal Appeals was the proper forum for resolution of the dispute made the basis of this mandamus proceeding because there is a pending criminal proceeding and any appeal from that proceeding would be to that court.
Our holding today does not require us to revisit Ex parte Galanos because that case upheld jurisdiction in the Court of Civil Appeals where the dispute related to payment of attorney fees after the criminal proceeding had been concluded. Furthermore, we do not reach a result inconsistent with Ex parte McNabb, which also stemmed from a pending criminal proceeding. McNabb involved the payment of the transcript of the first trial, which had ended in a mistrial. The Court of Criminal Appeals transferred McNabb's petition to this Court to determine whether the Court of Criminal Appeals had jurisdiction to issue writs of mandamus addressing the payment of extraordinary expenses. In McNabb, we recognized jurisdiction in the Court of Criminal Appeals because the right of a defendant to a fair trial if the requested transcript was not made available implicated an issue as to which that court had appellate jurisdiction. 879 So.2d at 1169.[2]

*450 III. The Merits of Isbell's Petition

A. Standard of Review
As we stated in Ex parte Land, 775 So.2d 847, 850 (Ala.2000):
"We begin with the rule that `mandamus is a drastic and extraordinary writ that will be issued only when there is: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.' Ex parte Horton, 711 So.2d 979 (Ala.1998) (citations omitted). This Court has held that a petition for the writ of mandamus is the proper means for seeking appellate review of a trial court's discovery order. Ex parte Monk, 557 So.2d 832 (Ala.1989)."

B. Analysis
Isbell states the issue to be whether his attorney will be required to drive to Calera to obtain DFS records or whether DFS will use the services of the United States Postal Service, e-mail, or a facsimile machine to provide records to Isbell. The district attorney contends that because the circuit court directed DFS to turn over to Isbell the complete history of malfunctions, repairs, or reports of malfunctions on the Draeger brand device known as ARMM-0423, DFS will be required to research, inspect, identify, copy, and assemble the subject materials and deliver them to Isbell's attorney. A representative of DFS testified that compliance with the trial court's order would be unduly burdensome, requiring the attention of all nine scientists on staff, thereby effectively "shutting down" DFS for the time it takes to produce the materials requested by Isbell. That representative also testified that DFS will be "shut down" if it receives "a number of requests." He stated: "If we get a court order that we must supply you with all this information for this everyone in the state will want all this information for every case. It's going to shut us down." Isbell points out that earlier in the DFS representative's testimony, however, when the trial court asked him who would get the information when someone requesting records comes to DFS, he said: "One of us actually does it."
The Open Records Act, § 36-12-40, Ala.Code 1975, provides:
"Every citizen has a right to inspect and take a copy of any public writing of this state, except as otherwise expressly provided by statute. Provided however, registration and circulation records and information concerning the use of the public, public school or college and university libraries of this state shall be exempted from this section. Provided further, any parent of a minor child shall have the right to inspect the registration and circulation records of any school or public library that pertain to his or her child. Notwithstanding the foregoing, records concerning security plans, procedures, assessments, measures, or systems, and any other records relating to, or having an impact upon, the security or safety of persons, structures, facilities, or other infrastructures, ... the public disclosure of which could reasonably be expected to be detrimental to the public safety or welfare, and records the disclosure of which would otherwise be detrimental to the best interests of the public shall be exempted from this section...."
Isbell argues that this is not an Open Records Act case. We disagree. No exception applies to this proceeding.
*451 The documents requested by Isbell relate to the maintenance and operation of public property of the State and, therefore, are clearly "public writings." See Stone v. Consolidated Publ'g Co., 404 So.2d 678, 681 (Ala.1981) ("Construing these statutes in pari materia, we hold that the `public writing' spoken of in Code 1975, § 36-12-40, is such a record as is reasonably necessary to record the business and activities required to be done or carried on by a public officer so that the status and condition of such business and activities can be known by our citizens."). The Open Records Act makes the documents available to Isbell for inspection and copying. We agree with the State that the Open Records Act does not obligate DFS to research, inspect, identify, copy, assemble, and make arrangements to deliver the documents to Isbell's attorney. The trial court's order, requiring the State to "turn over to [Isbell] the complete history of malfunctions, repairs or reports of malfunction on the Draeger Device ARMM-0423" and providing that Isbell, after copying the items, "shall then turn the records back over to the State," has precisely that effect. The Open Records Act relieves the State of that burden.
Isbell contends that Rule 16, Ala. R.Crim. P., affords a defendant the right to require the prosecutor to obtain materials in the hands of other government agencies, notwithstanding the availability of access to information provided by statute. Isbell relies upon City of Grand Forks v. Ramstad, 658 N.W.2d 731 (N.D.2003), in which the City argued that it had no duty to provide the documents requested by the defendant because he could have obtained them on his own from the State Toxicologist. The North Dakota Supreme Court held:
"The prosecution's suggestion that it had no duty to provide requested documents to the defendant if he had other means to obtain them `falls far short of compliance with' [N.D.R.Crim. P.] 16. United States v. Long, 817 F.Supp. 79, 80 (D.Kan.1993).
....
"... This is not the first instance in which the prosecution has argued it has no duty to provide discovery under N.D.R.Crim. P. 16 when the requested information is otherwise available to the defendant from other sources.... Our opinion in this case places all prosecutors on notice that N.D. R.Crim. P. 16 does not allow them to shift the burden of obtaining materials in the hands of other governmental agencies to the defendant."
658 N.W.2d at 737-38. We do not find the reasoning of the Supreme Court of North Dakota persuasive.
Rule 16.1(c), Ala. R.Crim. P., does not justify imposing a burden on the State over and above the requirement set forth in the Open Records Act for two reasons. First, Rule 16.1(c) provides only that "the prosecutor shall ... permit the defendant to analyze, inspect, and copy or photograph books, papers, documents, photographs, tangible objects, controlled substances, buildings or places, or portions of any of these things, which are within the possession, custody, or control of the state/municipality...." It is the defendant who is to do the "analyz[ing], inspect[ing], and copy[ing] or photograph[ing]." Thus Rule 16.1(c) requires the prosecutor to allow Isbell the opportunity to "analyze, inspect, and copy or photograph" the records. See Seagroves v. State, 726 So.2d 738, 744 (Ala.Crim.App. 1998) ("The appellant alleges that the state failed to provide him with a photocopy of the state's photograph of his truck. This is not a duty imposed on the state by Rule 16.1. The state was required to allow the defendant *452 to inspect and copy the photograph if he desired. The state provided him that opportunity, and he did not take advantage of it, and nothing more is required of the state under the discovery rule."); see also Ex parte Pope, 562 So.2d 131, 134 (Ala. 1989) ("We cannot hold the trial judge in error for not ordering the state to allow Pope to use these photographs, which were not in evidence at the time of Pope's request. We further cannot hold that the state's refusal was a violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), because the state had previously complied with a Temp. Rule 18, A.R. Cr. P. [now Rule 16], motion by defendant in which these photographs were disclosed by the state. Therefore, no error can be found on this issue."). Second, although Rule 16.1(c) requires the State to produce the documents material to the preparation of a defendant's defense that are within the "possession, custody, or control of the state/municipality," we construe that obligation to be satisfied by making such documents available pursuant to a legislatively created right to access the documents. Under similar rules of criminal procedure, in State v. Morton, 397 A.2d 171, 176 (Me.1979), the Supreme Judicial Court of Maine aptly observed:
"Nothing in the record indicates that the information sought by defendant was not readily available in the public records of disbursements made to the witnesses in the prior prosecutions. Rule 16 discovery is not designed to be a labor-saving device for defense counsel. Where the prosecution has material information which the defendant cannot easily obtain elsewhere, Rule 16 discovery is designed to equalize their positions. Here, since the public records were apparently accessible to both sides, Rule 16 cannot be employed by defense counsel for the purpose of making the prosecuting attorney do his work for him."
(Emphasis added.) Accord, Minnifield v. State, 439 So.2d 753, 755 (Ala.Crim.App. 1983) ("Moreover, there was evidence that the State's attorney did not even have a copy of the report. In any event, the appellant was not denied a copy of the report, because this is a public record which he could have obtained from the Auburn Laboratory Headquarters.") (second emphasis added).
The record is devoid of any indication that Isbell or his attorney has made application to DFS for access to these records and has been refused. This case presents the converse of the situation in Ex parte Perkins, 941 So.2d 242, 246 (Ala.2006), in which the defendant sought relief by a petition for a writ of mandamus to require the production of records open to the public. We denied the petition, noting that "Perkins does not cite any direct evidence showing the Board's refusal to produce Perkins's records."
When a statute affords the right to inspect and copy and the defendant successfully exercises that right, the requirements of Rule 16 have been satisfied. In this case, because the records were public records, Isbell had the right "to inspect, analyze, and copy" them without assistance from the prosecutor. He was entitled to no more.

IV. Conclusion
As to the jurisdictional question, we hold that the appropriate forum for resolution of a question involving a petition for an extraordinary writ arising from a pending criminal proceeding is the Court of Criminal Appeals. As to the merits of the State's petition, we hold that the circuit *453 court exceeded its discretion[3] in requiring DFS to produce matters of public record in a setting where there is no indication that Isbell has attempted to avail himself of the right to inspect and copy those public records and has been refused.
APPLICATION OVERRULED; OPINION OF AUGUST 24, 2007, WITHDRAWN; OPINION SUBSTITUTED; PETITION GRANTED; WRIT ISSUED.
SEE, LYONS, WOODALL, STUART, SMITH, and BOLIN, JJ., concur.
PARKER and MURDOCK, JJ., concur in the result.
COBB, C.J., recuses herself.
PARKER, Justice (concurring in the result).
Like Justice Murdock, I see no legal basis for any attempted differentiation between whether a matter arose during or after the conclusion of a criminal case in determining whether the Court of Criminal Appeals or the Court of Civil Appeals has jurisdiction in the case. I believe that the Alabama Court of Criminal Appeals has appellate jurisdiction over any matter related to a criminal case.
MURDOCK, Justice (concurring in the result).
I concur in the result. I write separately to address the issue of the respective jurisdictions of the Court of Criminal Appeals and the Court of Civil Appeals raised in Part II of the main opinion.
In describing this Court's holding in Ex parte Galanos, 796 So.2d 390 (Ala.2000), the main opinion states that this Court "held that a proceeding after the conclusion of the criminal case seeking payment of attorney fees for representing an indigent defendant was a civil matter as to which the Court of Criminal Appeals did not have appellate jurisdiction. 796 So.2d at 393." 985 So.2d at 448-49 (emphasis added). The main opinion subsequently concludes that the Court's holding today overruling Ex parte Smith, 794 So.2d 1089 (Ala.2001), "does not require us to revisit Ex parte Galanos because that case upheld jurisdiction in the Court of Civil Appeals where the dispute related to payment of attorney fees after the criminal proceeding had been concluded." 985 So.2d at 449 (emphasis added). I do not believe this Court should make the distinction reflected in the emphasized passages. Respectfully, I believe our doing so is contrary to (1) the controlling constitutional and statutory provisions, (2) the straightforward rationale of Justice Johnstone in his special writing in Ex parte Smith, upon which the main opinion today otherwise relies, and (3) sound, common-sense jurisprudence. By doing so, we persist in the notion that various disputes relating to criminal cases must be reviewed by the Alabama Court of Civil Appeals, rather *454 than by the Alabama Court of Criminal Appeals.
The constitutional and statutory provisions governing the question before us, as well as Justice Johnstone's stated rationale in Smith, admit of no distinction between the circumstances presented in each of the three cases referenced in the main opinion  Ex parte Galanos, Ex parte Smith, and Ex parte McNabb, 879 So.2d 1166 (Ala.2003). To the contrary, those provisions and Justice Johnstone's rationale apply with equal simplicity and force to all of those circumstances.
Section 12-3-9, Ala.Code 1975, describes the jurisdiction of the Court of Criminal Appeals: "The Court of Criminal Appeals shall have exclusive appellate jurisdiction of all misdemeanors, ... habeas corpus and all felonies, including all postconviction writs in criminal cases." Section 12-3-10, Ala.Code 1975, describes the appellate jurisdiction of the Court of Civil Appeals: "The Court of Civil Appeals shall have exclusive appellate jurisdiction of all civil cases [falling within certain categories] and all extraordinary writs arising from appeals in said cases."
Likewise, the Alabama Constitution and § 12-3-11 give the Court of Criminal Appeals jurisdiction to issue extraordinary writs "in relation to matters" in which that court has appellate jurisdiction. Amendment No. 328, § 6.03, Constitution of Alabama of 1901 (Art. IV, § 141, Official Recompilation of the Constitution of Alabama of 1901), provides, in pertinent part:
"(c) The court of criminal appeals and the court of civil appeals shall have no original jurisdiction except the power to issue all writs necessary or appropriate in aid of appellate jurisdiction of the courts of appeals.
"(d) The court of criminal appeals shall have and exercise original jurisdiction in the issuance and determination of writs of quo warranto and mandamus in relation to matters in which said court has appellate jurisdiction. Said court shall have authority to issue writs of injunction, habeas corpus, and such other remedial and original writs ... in matters over which it has exclusive appellate jurisdiction...."
(Emphasis added.) Consistent with this constitutional provision, § 12-3-11, Ala. Code 1975, provides:
"Each of the courts of appeals shall have and exercise original jurisdiction in the issuance and determination of writs of quo warranto and mandamus in relation to matters in which said court has appellate jurisdiction. Each court shall have authority to grant injunctions and issue ... remedial and original writs as are necessary to give it a general superintendence and control of jurisdiction inferior to it...."
(Emphasis added.)
Despite the foregoing provisions, and even after quoting from them, the Court in Galanos proceeded to announce what I respectfully submit is a counterintuitive conclusion: that a mandamus petition seeking review of a trial court's order setting attorney fees for defense counsel in a criminal case "was not proper in the court of Criminal Appeals." 796 So.2d at 393 (emphasis added). The Court decided that, rather than seeking appellate review in the Court of Criminal Appeals of the Mobile Circuit Court's order awarding attorney fees "in relation to" a criminal case, defense counsel should have filed a new collateral proceeding asking the same circuit court that had already ruled on his fee request to review its own order by means of a declaratory-judgment proceeding. Galanos, 796 So.2d at 392-93. Then, according to the Galanos Court, if the results of that declaratory-judgment proceeding *455 still are not satisfactory, defense counsel should take an appeal of that decision to the Alabama Court of Civil Appeals, not to the Alabama Court of Criminal Appeals. Galanos, 796 So.2d at 393.
In Smith, this Court relied on Galanos to hold that the Court of Criminal Appeals did not have jurisdiction to consider a petition for a writ of mandamus relating to a discovery dispute in a criminal case. In a special writing, Justice Johnstone explained why, as to the jurisdiction issue, the Court got it wrong in both Galanos and Smith. Using a simple, straightforward analysis, Justice Johnstone explained (1) why it made no sense to require the petitioner to file a separate declaratory-judgment action in the circuit court in order to obtain a review by the circuit court of its own order, and (2) why he believed the Court of Criminal Appeals clearly did have jurisdiction to entertain the petitions arising out of those criminal cases:
"A declaratory judgment action filed in the circuit court would not have been a valid vehicle to review the circuit court order inasmuch as the circuit court itself would have been the only correctly identifiable entity to name as the defendant: for the order signed by the trial judge was not the order of that judge but was, rather, the order of the circuit court itself. The State could not sue the circuit court in the circuit court.
"Notwithstanding the holding of Ex parte Galanos, 796 So.2d 390 (Ala.2000), in which I could not participate, the Court of Criminal Appeals did have jurisdiction to entertain the petition for writ of mandamus. This jurisdiction was conferred by Amendment 328, § 6.03, Alabama Constitution of 1901, which provides, in pertinent part, that the Court of Criminal Appeals has original jurisdiction `in the issuance and determination of writs of ... mandamus in relation to matters in which said court has appellate jurisdiction.' This capital murder case was a `matter[ ] in which said court has appellate jurisdiction,' and the dispute over this circuit court production order at issue was `in relation to' that very matter."
794 So.2d at 1093 (Johnstone, J., concurring in the judgment, but dissenting from the rationale).[4]
*456 The intent of Justice Johnstone's separate writing in Smith clearly was to explain what he considered to be the errors in the reasoning of the Court in Galanos, as well as in Smith. Justice Johnstone very clearly explained at least one of the reasons why the procedure announced in Galanos  requiring the filing of a declaratory-judgment action in a circuit court to challenge an earlier judgment of that same circuit court  was not a "valid vehicle" by which to review the circuit court's judgment. Smith, 794 So.2d at 1093.[5] He also took issue with the core premise of Galanos  that the Court of Criminal Appeals did not have appellate jurisdiction to consider a trial court's order arising out of a criminal proceeding. Id.
Despite Justice Johnstone's simultaneous criticism of both Galanos and Smith, the main opinion today relies upon a portion of Justice Johnstone's rationale to overturn only Smith, drawing a distinction between that case and Galanos and McNabb.[6] I cannot see how the disputes at issue in Galanos and McNabb, any less than the disputes in Smith and in the present case, were not disputes "`in relation to' [the] very matter[s]"  the criminal cases  from which they arose. To put it another way, I do not see how the three cited cases and the present case are analytically distinguishable from each other for purposes of applying Amendment No. 328, the above-quoted statutory provisions, and Justice Johnstone's analysis in Smith.
The lack of textual or analytical basis for distinguishing between appellate review of questions arising during a criminal case and questions arising after a criminal case is concluded corresponds with the respective institutional responsibilities, experience, and expertise of the two intermediate courts of appeal. The Court of Civil Appeals is not charged by law with responsibility for, or knowledge of, substantive or procedural criminal law. Its experience is in civil matters and, as an institution, it is ill equipped to assess criminal matters. The Court of Criminal Appeals, on the other hand, is charged by law both with responsibility for and a knowledge of substantive criminal law and criminal proceedings. When it comes to a matter relating *457 to a criminal case, whether it be an issue arising before trial, such as one regarding discovery, or an issue arising only after the entry of a final judgment, such as one regarding a criminal defense counsel's fee application, it is the Court of Criminal Appeals that, in all common sense and logic, should decide the question. It is the Court of Criminal Appeals that has the experience and expertise in criminal matters to make an informed judgment as to the infinite variety of questions that potentially can arise in relation to criminal proceedings. Cf. Collins v. Alabama Dep't of Corrections, 911 So.2d 739, 743-44 (Ala. Crim.App.2004) (Shaw, J., dissenting) (explaining that the "Court of Criminal Appeals is well suited to review" Department of Corrections decisions regarding reclassification of inmates, regardless of whether those decisions turn on factors other than the inmates' conduct in prison); Gerthoffer v. Alabama Dep't of Corrections, 973 So.2d 355, 359 (Ala.Civ.App.2007) (citing § 12-3-9, Ala.Code 1975, describing types of cases over which the Court of Criminal Appeals has jurisdiction, and § 12-3-10, Ala.Code 1975, describing types of cases over which the Court of Civil Appeals has jurisdiction, and "agree[ing] with and adopt[ing] the well-reasoned arguments set forth by Judge Shaw in his dissent in Collins"); Lee v. Layton, 51 Ala.App. 298, 301, 285 So.2d 108, 112 (Ala.Civ.App.1973) ("On the other hand, had the controversy been about an incarceration on a criminal charge or suspected criminal charge or related to a criminal charge in some manner, we would conclude that the appeal from such a habeas corpus proceeding would be in the jurisdictional sphere of the Court of Criminal Appeals." (emphasis added)).
Consider for example the following potential questions: Under criminal procedural law, did a trial court err to reversal by not allowing the discovery of certain documents? If so, who should be ordered to pay for their production? Is a criminal defendant entitled to a transcript of a prior proceeding that he contends is necessary to allow him to prepare his defense in a pending proceeding? In regard to a fee application, how much time should a criminal defense attorney reasonably have expended on certain tasks? Was the pursuit of a given tactic in preparation for an arraignment or a sentencing hearing reasonable, or even appropriate? How complex and/or novel was, for example, some Fourth Amendment search-and-seizure question, and how many hours in the research of that question, therefore, might reasonably have been justified? The nature of such potential questions highlight the need, at a practical level, for the Court of Criminal Appeals to address the types of matters at issue in all three cases (Galanos, Smith, and McNabb) referenced in the main opinion. This need certainly is no less with respect to the latter questions, those relating to fee applications in criminal cases that would arise upon the conclusion of a criminal case (as did the question in Galanos), than with respect to the former questions, those relating to discovery and other matters that would arise during a criminal case (as did the questions in Smith and McNabb).[7]
Based on the foregoing, I concur in the analysis of Part II of the main opinion insofar as it embraces Justice Johnstone's rationale in his special writing in Ex parte Smith and, accordingly, overrules that case. I disagree with the analysis of Part *458 II insofar as it suggests that Justice Johnstone's rationale admits of some distinction as to the circumstances presented in Ex parte Galanos and Ex parte McNabb. To the contrary, his rationale applies with equal simplicity and force to those circumstances. I believe this Court also should overrule Ex parte Galanos and should disavow the reasoning in Ex parte McNabb.
NOTES
[1] Isbell disagrees with this description of the issue. See Part III of this opinion.
[2] In his special writing concurring in the result, Justice Murdock states, "I believe this Court also should overrule Ex parte Galanos and should disavow the reasoning in Ex parte McNabb." 985 So.2d at 458. If a question is presented in a future proceeding requiring us to address the issue of the continued vitality of those holdings, an issue the resolution of which is not necessary to today's decision, Justice Murdock's special writing indicates that such action should be given serious consideration.
[3] Isbell relies upon numerous decisions of this Court and the Court of Criminal Appeals holding that "[d]iscovery matters are within the sound discretion of the trial court, and this Court will not reverse a trial court's rulings on discovery issues unless there has been a clear abuse of discretion." Ex parte Harwell, 639 So.2d 1335, 1336 (Ala. 1993) (emphasis added). He then argues that this Court has applied an incorrect standard of review in holding that the trial court exceeded its discretion. This Court has for several years been using the phrase "exceeded its discretion" rather than the phrase "abused its discretion." The word "abused" has a negative connotation this Court does not believe is useful in describing the judicial acts of our trial court judges, thus prompting us to use the word "exceeded." The standard of review remains the same. See Ex parte Family Dollar Stores of Alabama, Inc., 906 So.2d 892, 899 (Ala.2005); Kyser v. Harrison, 908 So.2d 914, 918 (Ala.2005).
[4] As between a mandamus proceeding in the Court of Criminal Appeals and a collateral, declaratory-judgment proceeding in the same circuit court that entered the original fee award, I certainly believe Justice Johnstone was correct in his conclusion that a mandamus proceeding in the Court of Criminal Appeals was the only proceeding that could be considered appropriate. I would go a step further, however, and ask whether the appropriate vehicle for appellate review would be an appeal to the Court of Criminal Appeals, rather than a mandamus proceeding.

It is well established that an order awarding attorney fees in relation to an underlying case is, itself, an appealable judgment. Niezer v. SouthTrust Bank, 887 So.2d 919, 923 (Ala. Civ.App.2004) ("[A]ttorney-fee matters are separate and distinct from matters going to the merits of a dispute and ... an appeal may be taken from a final judgment as to either aspect of a case."); Hunt v. NationsCredit Fin. Servs. Corp., 902 So.2d 75, 81 (Ala.Civ.App. 2004) (concluding that Niezer stands for the proposition that "an order denying an award of attorney fees that is ancillary to an earlier decision and has completely adjudicated all matters in controversy between the parties is immediately appealable" and is consistent with the United States Supreme Court decision in Budinich v. Becton Dickinson & Co., 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988)); Sparks v. Parker, 368 So.2d 528 (Ala. 1979) (reviewing a trial court's order establishing and administering Calhoun County's indigent-defense system by way of an appeal); C.A. Wright et al., Federal Practice and Procedure § 3915.6 (2d ed.1992); Clark v. Johnson, 278 F.3d 459 (5th Cir.2002) (holding that an order denying compensation under the federal Criminal Justice Act for services performed before a state clemency board by counsel appointed to represent a state prisoner was final and appealable, despite the fact that the order was separate from the merits of the habeas corpus proceeding). Cf. Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 170, 59 S.Ct. 777, 83 L.Ed. 1184 (1939) (giving certiorari review to an attorney-fee order appealed to the lower appellate court and observing that a petition for an attorney fee in equity is "an independent proceeding supplemental to the original proceeding"). The delegation in § 12-3-9 to the Court of Criminal Appeals of jurisdiction over criminal cases involving misdemeanors and felonies necessarily and logically includes jurisdiction to review any appealable order arising out of or relating to such a case.
[5] The opinion in Ex parte Galanos reasoned that a declaratory-judgment proceeding would have allowed for a fully developed record against which the appellate court could review the trial court's decision. 796 So.2d at 392. I submit, however, that if the fee-award procedures employed by a trial court do not allow for an evidentiary hearing, and the development of an evidentiary record is reasonably necessary for the proper disposition of the issues raised in a given case, then that fact itself could be the proper subject of either a mandamus review by, or an appeal to, the Court of Criminal Appeals.
[6] The main opinion suggests that it is not necessary to revisit Ex parte McNabb because the Court of Criminal Appeals properly exercised jurisdiction over a dispute regarding a defendant's request for a transcript when that dispute implicated the defendant's right to a fair trial. The rationale used by Justice Johnstone, however, would give the Court of Criminal Appeals jurisdiction of a dispute "in relation to" a criminal matter, even if the dispute did not implicate the defendant's right to a fair trial.
[7] I point out this practical need not to argue for what the jurisdictional lines ought to be, but to explain the wisdom of adherence to those lines. The text of Amendment No. 328 and of the jurisdictional statutes discussed above is sufficiently simple and straightforward so as not to admit of ambiguity requiring parol facts to understand their intent.