991 So.2d 782 (2008)
Ex parte Antonia M. HALL and Carolyn Ann Lewis Hall.
(In re State of Alabama
v.
Antonia M. Hall and
In re State of Alabama
v.
Carolyn A. Hall).
1070419.
Supreme Court of Alabama.
March 14, 2008.
*783 Russell T. Duraski, Montgomery, for petitioners.
Submitted on petitioner's brief only.
Prior report: Ala.Crim.App., 991 So.2d 775.
LYONS, Justice.
WRIT DENIED. NO OPINION.
SEE, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
COBB, C.J., and MURDOCK, J., dissent.
COBB, Chief Justice (dissenting).
I respectfully dissent from the denial of the petition for the writ of certiorari. The petitioners, Antonia M. Hall and Carolyn A. Hall, seek review of the Court of Criminal Appeals' decision under Rule 39(a)(1)(D), Ala. R.App. P., on the basis that the decision of the Court of Criminal Appeals conflicts with prior decisions.
I do not believe that this petition could properly be denied on the rationale that the petition is procedurally insufficient because the Halls supposedly failed to present in sufficient detail the portions of the Court of Criminal Appeals' opinion as to which they assert the conflict exists. Any procedural failure on this point is remedied by the fact that the conflict of the Court of Criminal Appeals' opinion with Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), is readily ascertainable, and the facts in the Court of Criminal Appeals' opinion, which is attached to the Halls' petition, are sufficient in themselves to support this Court's review.
Further, I cannot conclude that the petition has no probability of merit. This petition shows that the prosecution engaged in serious violations of Brady and of the trial court's discovery orders, which resulted in the trial court's dismissing the charges of burglary, theft, and fraudulent use of a credit card against the Halls. The State appealed the dismissal of the charges, and the Court of Criminal Appeals reversed the trial court's judgment. State v. Hall, 991 So.2d 775 (Ala.Crim.App. 2007). The facts underlying the Brady violation and the violation of the trial court's discovery orders, as summarized by the Court of Criminal Appeals, are as follows:
"Antonia Hall was indicted for third-degree burglary, a violation of § 13A-7-7, Ala.Code 1975, and first-degree theft, a violation of § 13A-8-3, Ala.Code 1975, for the theft of credit and debit cards, a television set, a laptop computer, and jewelry. Carolyn Hall was indicted for fraudulent use of a credit card, a violation of § 13A-9-14(b), Ala.Code 1975, for using one of the credit cards that her husband, Antonia, allegedly stole.
"The record in both cases indicates the following. At the outset of the investigation in this matter, the Halls' attorney, Russell Duraski, discussed with law-enforcement officials the existence of a videotape that had been recorded at Calhoun Foods, the grocery store where Carolyn Hall was alleged to have used a stolen credit card. Duraski said he asked whether he could watch the videotape with investigators to determine whether the Halls were the people seen on the videotape using certain credit cards. The investigators told him they would `get with the prosecutors' and then let him view the tape with them.
"The Halls' position was that they were not involved in the theft and use of the credit cards, and they are `absolutely *784 adamant' that they were not the people seen in the videotape.
"Duraski was never given the opportunity to view the videotape, and the Halls were arrested. On October 13, 2006, the day the Halls' preliminary hearing was to be held, Duraski had a conversation with a deputy district attorney and law-enforcement officials during which it was agreed that the Halls would waive the preliminary hearing in exchange for production of discovery, including the videotape at issue. Duraski said he was told that he would have the videotape `in a few days.' At that time, a police officer told Duraski he had the videotape.
"The videotape was never produced, despite Duraski's repeated requests. Also, Duraski said he had been made aware that there was another videotape recorded at a business in Auburn. That tape also was not produced. The Halls filed a motion to compel discovery. At their arraignment on November 30, 2006, they again requested the videotape and made an oral motion to the trial court to supplement their written motion. On December 3, 2006, the trial court granted their motion to compel and ordered the prosecution to produce all discovery, including the videotape recorded at Calhoun Foods, on or before the close of business on December 8, 2006.
"In mid-January 2007, Duraski said he was told that the Calhoun Foods videotape had been `accidentally destroyed' and that it no longer existed. Duraski was provided with a photograph in lieu of the tape, but, he said, he was unable to make out anything about the person in the photograph.
"The trial court asked for an explanation from the State as to why it either had not provided the Calhoun Foods videotape to Duraski or why it continued to promise him the tape if it had been destroyed. In ruling that the indictments against the Halls were being dismissed, the trial court said, `We went for months and months saying we're going to get you a tape when there wasn't one to get.'
"The court continued its explanation for the dismissal of the indictments, saying:
"`[T]hat is bad conduct on the part of the State, and we cannot just continue to make false representations like that. I mean, that is inappropriate. And Mr. Duraski's whole case, as I understand it from him, was whether or not these folks could be identified on the tape. In other words, if they were on the tape and you can identify them, then, fine, that speaks for itself. But even if you couldn't identify them, that didn't mean the case was going away. That just would tell Mr. Duraski, hey, I've got something good to argue at trial; you can't tell that's my folks. But the tape was very instrumental in his defense.'
"The trial court then reiterated that it was dismissing the indictments because the State's conduct was improper, saying, `[Y]ou cannot continue for months and make representations that are not true. I mean, that is totally improper."
State v. Hall, 991 So.2d at 775 (references to record omitted).
The law invests a trial court with the discretion to impose sanctions for violating discovery orders in criminal cases by entering enter "such ... order[s] as the court deems just under the circumstances." Rule 16.5, Ala. R.Crim. P. Thus, the sanctions imposed must be reviewed to see if the trial court exceeded that discretion in imposing the sanctions. See, e.g., Jennings v. State, 965 So.2d 1112, 1114 (Ala.Crim.App.2006). Likewise, the sanctions imposed for a Brady violation are *785 reviewed to see if the trial court exceeded its discretion. State v. Moore, 969 So.2d 169, 181-82 (Ala.Crim.App.2006) (recognizing that, for a Brady violation, dismissal is an available sanction pursuant to the supervisory powers granted trial courts under Rule 16.5, Ala. R.Crim. P.); cf., e.g., United States v. Vallejo, 297 F.3d 1154, 1163 (11th Cir.2002). "`When applying the abuse of discretion standard,[1] a reviewing court is not free to merely substitute its judgment for that of the trial court.'" Ex parte Anonymous, 803 So.2d 542, 557 (Ala.2001) (Lyons, J. concurring specially) (quoting In re Jane Doe 01-01, 141 Ohio App.3d 20, 23, 749 N.E.2d 807, 809 (2001) (citations omitted)).
I agree with the Court of Criminal Appeals' statement in this case that, in fashioning a discovery sanction in a criminal case, the trial court must weigh "`the right of the accused to be given a fair trial'" against "`the societal interest in punishing one whose guilt is clear after he has obtained such a trial.'" 991 So.2d at 780 (quoting United States v. Tateo, 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964)). I further agree that dismissal of an indictment is "`"an extreme sanction that should be used with caution, and only when a lesser sanction would not achieve the desired result."'" 991 So.2d at 780 (quoting State v. Moore, 969 So.2d 169, 183 (Ala.Crim.App.2006), quoting in turn State v. Carpenter, 899 So.2d 1176, 1182 (Fla. Dist.Ct.App.2005)).
Thus, dismissal is the appropriate sanction when, in the exercise of its discretion, the trial court determines that, even with less severe sanctions and curative measures, a defendant, as a result of the prosecution's discovery violation, cannot be afforded a fair trial. The trial court here found that the government had engaged in "bad conduct," that the Halls' "whole case" relied on the tape allegedly destroyed by the government, and that the tape was "very instrumental in [their] defense." In other words, by allegedly destroying the videotape, the prosecution destroyed the Halls' "whole defense." Even the Court of Criminal Appeals recognized that "it is difficult, if not impossible, for the Halls to refute the government's claims as to what was on the videotape if the videotape no longer exists." Hall, 991 So.2d at 781. On this record, a reasonable probability exists that the Court of Criminal Appeals erred by replacing the trial court's judgment with its own in concluding that the Halls could get a fair trial with the imposition of lesser sanctions than dismissal after the destruction of the Halls' "whole defense."
The Court of Criminal Appeals held that dismissal is an appropriate sanction for a Brady violation or a violation of a discovery order when the discovery violation is willful and irreparably prejudices the defense. A reasonable probability exists that the Court of Criminal Appeals erred in applying this holding here. The Court of Criminal Appeals found that the Halls were "no doubt prejudiced" by the absence of the tape. The Court of Criminal Appeals then stated that it is "less clear" whether the government's misconduct was willful. Nevertheless, the Court of Criminal Appeals' opinion goes on to state convincingly why the law-enforcement officials' version of how the tape was "accidentally" destroyed while still in the possession of the grocery store is unbelievable. I note further that not one, but two tapes, were not produced, and that *786 the second tape was not recorded at the same store as the first. This fact further highlights the absurdity of the government's tale that an "accident" at the grocery store prevented law enforcement from turning the evidence over to the defense. The Court of Criminal Appeals itself makes a convincing case that the tape must have been in the possession of law enforcement, that law enforcement promised to produce the tape, that law enforcement knew that the court had ordered production of the tape, and that law enforcement was nevertheless responsible for the disappearance or destruction of the tape. Therefore, on the record before us, a reasonable probability exists that the discovery violation was indeed willful; that the trial court did not exceed its discretion in dismissing the indictments; and that the Court of Criminal Appeals erred in substituting its judgment for that of the trial court.
In addition, I find merit in the Halls' statement that the Court of Criminal Appeals "suggests that a less extreme sanction should have been employed, then offers no appropriate less extreme sanction." (Halls' brief at ¶ 3.) The Court of Criminal Appeals apparently concludes that imposing the "sanction" of allowing the Halls to cross-examine prosecution witnesses and to elicit evidence regarding the unexplained loss of the tape "provides a better balance" between the Halls' right to a fair trial and "society's right to seek justice." As the Court of Criminal Appeals noted, society's right to seek justice is its right to "`punish[] one whose guilt is clear after'" a fair trial. Hall, 991 So.2d at 780 (quoting United States v. Tateo, 377 U.S. at 466, 84 S.Ct. 1587). The Halls' petition demonstrates a reasonable probability that the Court of Criminal Appeals erred in holding that the "sanction" of allowing the defense to cross-examine prosecution witnesses and to elicit evidence concerning the missing videotapes while inviting the prosecution to provide testimony about the supposed contents of the missing videotapes is sufficient to permit a fair trial in this case. That is, the petition demonstrates that the Court of Criminal Appeals erred in substituting its judgment for that of the trial court, on the facts presented here and without any compelling legal authority.
Further, I do not believe that this petition could properly be denied on the rationale that the status of the tape as exculpatory is speculative. I do not see how that rationale could be supported without a full review of the record in light of the fact that the videotape has been destroyedat this point, it is at least equally speculative that the tape is inculpatory, i.e., that it does not show individuals other than the Halls. Under the circumstances, the Halls' inability to prove what is on the videotape should not work to the Halls' prejudice, given that the Halls are seeking review of the government's "bad conduct" in failing to make the tape available in the first place and then in destroying or failing to safeguard the tape.
For these reasons, I believe this Court should issue the writ and fully review the issues raised in the Halls' petition.
NOTES
[1] "This Court has for several years been using the phrase `exceeded its discretion' rather than the phase `abused its discretion.' The word `abused' has a negative connotation this Court does not believe is useful in describing the judicial acts of our trial court judges, thus prompting us to use the word `exceeded.' The standard of review remains the same." State v. Isbell, 985 So.2d 446, 453 n. 3 (Ala. 2007).