794 So.2d 1089 (2001)
Ex parte Lorenzo SMITH.
(Re Ex parte State (Re State v. Lorenzo Ren Smith)).
1990871.
Supreme Court of Alabama.
April 6, 2001.
Ben E. Bruner and C. Pate DeBardeleben, Montgomery, for petitioner.
Eleanor I. Brooks, district atty., and Todd A. Brown, deputy district atty., Montgomery, for respondent.
Bruce A. Gardner of Hamilton & Gardner, Huntsville, for amici curiae Alabama Criminal Defense Lawyers Association and *1090 National Association of Criminal Defense Lawyers.
Brief filed in support of application for rehearing: Frances Allen Long, Sr., Presiding Judge; and H. Ward McMillan and James H. Fry, Judges pro se, as Judges on the Alabama Court of Criminal Appeals.

On Application for Rehearing
PER CURIAM.
The opinion released on September 29, 2000, is withdrawn and the following opinion is substituted therefor.
Lorenzo Ren Smith is charged in the Montgomery Circuit Court with capital murder, and the State has indicated it intends to seek the death penalty. The trial court declared Smith to be indigent. The circuit court also entered an order requiring the Montgomery Police Department (hereinafter usually referred to as "the Department") to provide Smith's attorneys with a free copy of certain discovery materials and to obtain reimbursement, at the conclusion of Smith's trial, from the Fair Trial Tax Fund. On the State's petition, the Court of Criminal Appeals, on January 21, 2000, without an opinion, issued a writ of mandamus directing the Montgomery Circuit Court to vacate that order. State v. Smith (No. CR-99-0560), ___ So.2d ___ (Ala.Crim.App. 2000) (table).
Smith now petitions this Court, pursuant to Rule 21, Ala.R.App.P., for a writ of mandamus directing the Court of Criminal Appeals to vacate its writ of mandamus. The sole issue raised by the petition is whether the trial court has the discretion to order the Department, without prepayment by the defense, to incur the costs associated with reproducing the discovery materialsbut before we can address that question we must consider whether it has been properly brought up through the use of the mandamus procedure. For the reasons set forth below, we issue a writ directing the Court of Criminal Appeals to vacate its writ of mandamus.
The following facts are helpful to an understanding of this issue: In October 1998, a Montgomery County grand jury returned an indictment charging Smith with three counts of capital murder in the death of Mattie Patterson. The indictment was based on evidence indicating that Smith entered Ms. Patterson's apartment, strangled her with a telephone cord, and then stole property belonging to her. The State's evidence includes a videotaped confession Smith made to officers of the Montgomery Police Department, digitally produced photographs of the crime scene that have been stored on a compact disc, and DNA evidence that purportedly establishes the presence of the victim's blood on Smith's clothing. This evidence is in the possession of the Department.
The prosecution has given Smith's attorneys a copy of all the documents in its case file, and Smith's attorneys have been allowed to review and inspect the videotaped confession, the digitally produced photographs of the crime scene, and the results of tests performed on the DNA evidence. Additionally, Smith's attorneys have been given continuous access to this evidence, and they are allowed to examine it as often as necessary. The State has also agreed to furnish Smith's attorneys with copies of the evidence in the Department's possession, on the condition that Smith's attorneys pay the Department in advance for the costs it will incur in making the copies. The State asserts in its brief that the cost to reproduce the requested items of evidence would be about $75.00.
Smith's attorneys, however, are concerned that these arrangements proposed by the State would provide them little, if any, assistance in defending their client against a capital-murder charge. Smith has an IQ of about 59 and is moderately retarded. Smith's attorneys fear that he may lack the reasoning ability and memory *1091 to rationally discuss events essential to his defense, events that took place months before the trial will be held, such as his interrogation by the police, and they fear even more strongly that he will be unable to discuss such abstract concepts as those described by the terms "knowingly," "willingly," and "intelligently." In short, Smith's attorneys believe that, unless they are able to view the videotaped confession and the digitally produced photographs of the crime scene in the presence of Smith, they may as well not view them at all. Thus, they say, they need a copy of the videotape and a copy of the compact disc with the photographs.
On October 13, 1999, Smith moved the trial court to order the State to furnish his attorneys with copies of the requested evidence free of costs. The State did not oppose Smith's motion. On October 28, 1999, the trial court entered an order that stated, in pertinent part:
"It is hereby ordered that defendant's motion to be provided a copy of the videotape of [his] confession, a copy of the videotape of the crime scene, and a [compact disc] copy of the digital photographs taken at the crime scene at no cost to the defendant is granted. A reasonable sum will be ordered to be paid for the copies; however, the Montgomery Police Department will copy the videos within seven days from the date of this order, and [the Department] will turn over the copies to the counsel for the defendant, together with a statement for the Montgomery Police Department's copying services. At the conclusion of this action, the Court will order that the expenses for copying be paid from the Fair Trial Tax Fund."
(Emphasis added.)
On November 3, 1999, the State moved to have defense counsel pay for the costs of making copies of the evidence. The trial court denied this motion. The State moved for a "reconsideration" of that ruling, but the court denied that motion, as well. On December 22, 1999, the State petitioned the Court of Criminal Appeals for a writ of mandamus directing the circuit court to vacate its order and to order instead that Smith's attorneys pay the Department in advance for the costs incurred in copying the discovery materials in the Department's possession and to obtain reimbursement later in accordance with Ala. Code 1975, § 15-12-21. On January 21, 2000, the Court of Criminal Appeals granted the State's petition, issuing a writ of mandamus (unpublished) that read as follows:
"Circuit Judge William Shashy is ordered to vacate his October 28, 1999, order requiring the State to furnish the requested documents without receiving prepayment for the costs associated with producing copies. The costs associated with furnishing defendant Smith with the requested videotapes and photographs should be tendered by counsel before the State is obligated to provide copies. Expenses associated with discovery of requested evidence are expenses contemplated in § 15-12-21(d), Code of Alabama 1975, and which are recoverable by an appointed attorney at the conclusion of trial."
(Emphasis added.) It is from this order that Smith seeks relief.
We begin our analysis by considering this Court's holding in Ex parte Galanos, 796 So.2d 390 (Ala.2000) (issuing a writ directing the Court of Criminal Appeals to vacate its order issued in Ex parte Bush, 796 So.2d 383 (Ala.Crim.App.1998)). Peter Austin Bush was a Mobile attorney who accepted appointments to defend indigent criminal defendants before the Mobile Circuit Court. After he completed his work for his clients in 11 cases in the circuit *1092 court, Bush submitted a bill for his services, in the form of "attorney-fee declarations," to the Mobile Circuit Court. He expected the circuit court to approve his fee requests and then send them on to Montgomery for payment by the State comptroller, in accordance with Ala.Code 1975, § 15-12-21(e). The Mobile Circuit Court reviews indigent-defense attorney-fee declarations in the following manner: The responsibility for reviewing and approving all fee declarations "rotates" among the circuit judges on an approximately annual basis. The indigent-defense attorney-fee declarations are submitted to the currently designated reviewing judge and to a committee made up of five lawyers who practice criminal law in Mobile County. The designated judge reviews the committee's recommendations, independently reviews each fee declaration, and then approves a fee, which is submitted to the State comptroller for payment.
After receiving Bush's "amended" attorney-fee declarations, the Comptroller's Office notified Bush that the fees approved by Judge Chris Galanos, the designated reviewing judge, were substantially less than the amounts Bush had submitted. Bush inquired of Judge Galanos's office and was told that Judge Galanos would not approve certain expenses. Judge Galanos had not asked Bush for an explanation of any amount or any expense that was being denied. Further, Judge Galanos had personally presided in only one of the cases in which he had reduced Bush's requested fee. Bush petitioned for a writ of mandamus, asking the Court of Criminal Appeals to direct payment for all monies requested on his attorney-fee declarations. The Court of Criminal Appeals granted Bush's petition, holding, in pertinent part, that "Judge Galanos [was] without jurisdiction to consider the fee claims for those cases not tried in his court." Ex parte Bush, 796 So.2d at 385.
Thereafter, the judges of the Mobile Circuit Court who had been respondents as to Bush's petition filed their own de novo mandamus petition in this Court, asking this Court to direct the Court of Criminal Appeals to vacate its writ of mandamus.[1] They claimed that Bush had failed to make the showing necessary for the writ to issue and, therefore, that the Court of Criminal Appeals had erred in granting Bush's petition. This Court held, in part, that the Court of Criminal Appeals did not have jurisdiction to hear Bush's petition:
"We also note that `properly invoked jurisdiction'the fifth requisite for obtaining mandamus reliefis absent here. Ala. Const.1901, Amend. No. 328, § 6.03, establishes the jurisdiction for Alabama's Courts of Appeals. That section provides, in pertinent part:
"`(c) The court of criminal appeals and the court of civil appeals shall have no original jurisdiction except the power to issue all writs necessary or appropriate in aid of appellate jurisdiction of the courts of appeals.
"`(d) The court of criminal appeals shall have and exercise original jurisdiction in the issuance and determination of writs of quo warranto and mandamus in relation to matters in which said court has appellate jurisdiction....'
"Section 12-3-9, Ala.Code 1975, provides that `[t]he Court of Criminal Appeals shall have exclusive appellate jurisdiction of all misdemeanors, including the violation of town and city ordinances, habeas corpus and all felonies, including all post conviction writs in criminal *1093 cases.' Clearly, jurisdiction for Bush's mandamus petition was not proper in the Court of Criminal Appeals.

"On the other hand, § 12-3-10 provides that `[t]he Court of Civil Appeals shall have exclusive appellate jurisdiction of all civil cases where the amount involved, exclusive of interest and costs, does not exceed $ 50,000 ... and all extraordinary writs arising from appeals in said cases.' Thus, after litigation in the circuit court, a judgment in a declaratory-judgment action may be appealed to the Court of Civil Appeals."
Galanos, 796 So.2d at 393. (Emphasis added.)
The Court of Criminal Appeals has no jurisdiction to hear mandamus petitions related to matters not appealable to that court. Galanos. Thus, the State's petition to the Court of Criminal Appeals was defective because of the absence of a prerequisite for a writ of mandamus: "properly invoked jurisdiction." Id. (and cases cited therein).
Accordingly, Smith is entitled to a writ of mandamus. The Court of Criminal Appeals is directed to vacate the writ of mandamus issued on the State's petition in case number CR-99-0560.
APPLICATION OVERRULED; OPINION OF SEPTEMBER 29, 2000, WITHDRAWN; OPINION SUBSTITUTED; WRIT ISSUED.
MOORE, C.J., and HOUSTON, SEE, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
JOHNSTONE, J., concurs in the judgment but dissents from the rationale, and concurs to overrule the application for rehearing.
JOHNSTONE, Justice (concurring in the judgment but dissenting from the rationale, and concurring to overrule the application for rehearing).
I will summarize my rationale. The production order issued by the Circuit Court for Montgomery County was right, first because the State did not timely oppose it, and second because it followed the constitutional requirements for due process. However, the State's petition to the Court of Criminal Appeals for a writ of mandamus was the proper vehicle for review of the circuit court order. A declaratory judgment action filed in the circuit court would not have been a valid vehicle to review the circuit court order inasmuch as the circuit court itself would have been the only correctly identifiable entity to name as the defendant: for the order signed by the trial judge was not the order of that judge but was, rather, the order of the circuit court itself. The State could not sue the circuit court in the circuit court.
Notwithstanding the holding of Ex parte Galanos, 796 So.2d 390 (Ala.2000), in which I could not participate, the Court of Criminal Appeals did have jurisdiction to entertain the petition for writ of mandamus. This jurisdiction was conferred by Amendment 328, § 6.03, Alabama Constitution of 1901, which provides, in pertinent part, that the Court of Criminal Appeals has original jurisdiction "in the issuance and determination of writs of ... mandamus in relation to matters in which said court has appellate jurisdiction." This capital murder case was a "matter[ ] in which said court has appellate jurisdiction," and the dispute over this circuit court production order at issue was "in relation to" that very matter. The error of the Court of Criminal Appeals was not in exercising jurisdiction but rather was in issuing the writ of mandamus directing the trial court to vacate its production order, which was, *1094 as I have already mentioned, a valid production order. Because the Court of Criminal Appeals erred in this respect, I concur in the judgment of this Court to issue a writ of mandamus to the Court of Criminal Appeals and thereby to direct that court to vacate its writ of mandamus issued to the trial court.
NOTES
[1] See Rule 21(e)(1), Ala.R.App.P.