JOINER, Judge.[1]
Joseph W. Hutchinson III appeals from two orders of the Choctaw Circuit Court approving only part of the attorney-fee declarations Hutchinson submitted for his representation of Medell Banks, Jr. We remand with instructions.

Facts and Procedural History

Hutchinson originally filed a notice of appeal to this Court. In an unpublished order dated December 4, 2009, this Court transferred Hutchinson’s appeal to the Alabama Supreme Court.[2] The Supreme Court, however, has transferred the appeal back to this Court. Hutchinson v. State, 66 So.3d 220 (Ala.2010). In its opinion transferring the appeal, the Supreme Court stated the following facts, which are also relevant here:
*757 “On August 26, 1999, Joseph W. Hutchinson III, an attorney, was appointed to represent Medell Banks, Jr., an indigent defendant, in a capital-murder case. On May 7, 2001, Banks entered a ‘best-interest’ plea of guilty to manslaughter for the death of his wife’s newborn baby. On June 25, 2001, the trial court sentenced Banks to 15 years’ imprisonment. Banks later moved to withdraw his guilty plea based on newly discovered evidence indicating that his wife could not have been pregnant and bore the child Banks was accused of killing. The trial court denied Banks’s motion to withdraw his plea, and Banks appealed to the Court of Criminal Appeals. On August 9, 2002, the Court of Criminal Appeals held that a manifest injustice had occurred after Banks obtained test results that showed that his wife could not have been pregnant when she was allegedly carrying the child Banks was accused of killing, and it reversed the trial court’s judgment and remanded the cause for the trial court to grant Banks’s motion to withdraw his guilty plea. Banks v. State, 845 So.2d 9 (Ala.Crim.App.2002). The facts underlying this case are set out in the Court of Criminal Appeals’ opinion. The capital-murder charges against Banks remained pending after Banks withdrew his guilty plea. Eventually, Banks entered a best-interest plea to tampering with physical evidence, a misdemeanor. The capital-murder charge was dismissed. Banks was sentenced to time served.
“On December 16, 2008, Hutchinson, who had represented Banks throughout his trial and appellate proceedings, filed two attorney-fee declarations. The first fee declaration was for work completed in the proceedings in the trial court before the appeal to the Court of Criminal Appeals.... Hutchinson’s second fee declaration involved work completed after Banks filed his appeal....
“The trial judge who presided over the criminal proceedings against Banks had retired, and a new judge was assigned Hutchinson’s fee declarations. Following a hearing, the trial court reduced Hutchinson’s claims for out-of-court expenses and for overhead expenses for both the trial and appellate proceedings.”
Hutchinson, 66 So.3d at 221.

Discussion

On appeal, Hutchinson presents two issues. First, he argues that the trial court exceeded its discretion in failing to approve the full amount of his fee declarations because, he says, the undisputed evidence indicated that his work was reasonable and necessary to Banks’s defense and that it prevented a grave miscarriage of justice. Alternatively, Hutchinson contends that the trial court exceeded its discretion by failing to articulate its reasons for reducing the amount of the fees Hutchinson claimed. We agree -with Hutchinson’s alternative argument, and we remand this cause to the trial court for it to explain why it reduced'the fee amounts Hutchinson submitted on his fee declarations.
As noted above, Hutchinson submitted two fee declarations to the trial court: The first was for work Hutchinson performed in the trial court before the appeal to this Court, and the second was for work completed after Banks filed his appeal. Each fee declaration included detailed itemiza-tions of the amounts Hutchinson claimed.
Hutchinson’s first fee declaration sought the following amounts:
— $1,635 in in-court expenses, representing 27.25 hours at $60 an hour;
*758 — $18,557.60 in out-of-court expenses, representing 463.94 hours at $40 an hour;
— $3,803.95 in extraordinary expenses approved in advance by the trial court; and
— $17,191.65 in overhead expenses, representing 491.19 hours at $35 an hour.
The second fee declaration sought the following amounts:
— $2,610 in in-court expenses, representing 43.50 hours at $60 an hour;
— $28,046 in out-of-court expenses, representing 701.15 hours at $40 an hour; extraordinary expenses approved in advance by the court of $5,143.15; and overhead expenses of $26,062.75, representing 744.65 hours at $35 an hour.
Because the judge who had presided over Banks’s criminal proceedings had retired, the fee declarations were assigned to a new judge. An evidentiary hearing was held on March 9, 2009. Hutchinson testified at the hearing, as did attorney Jim Evans, who served as appointed cocounsel with Hutchinson during Banks’s proceedings, and attorney Spencer Walker, who had served as appointed counsel for Banks’s wife Victoria.
On September 2, 2009, the trial court entered separate orders on the fee declarations. On each fee declaration, the trial court approved Hutchinson’s litigation expenses and the amounts Hutchinson sought for in-court time. On both fee declarations, however, the trial court reduced the amounts Hutchinson sought for out-of-court time and for office overhead expenses.
In the first fee declaration, Hutchinson sought $18,557.60 for out-of-court work (463.94 hours at the rate of $40 per hour) and overhead expenses of $17,191.65 (491.19 hours at the rate of $35 per hour). The trial court reduced the fee for out-of-court work to $11,597.46 and the overhead expenses to $8,595.82. The trial court gave no explanation for the reductions, other than a handwritten note on the fee declaration stating that the reduced amounts represented “39.75% of out of ct. hours.” The trial court did not explain, however, why it selected 39.75 as a percentage to reduce the out-of-court hourly fee and the overhead expenses. Moreover, it does not appear that the trial court actually reduced either of those expenses by 39.75 percent.
In the second fee declaration, Hutchinson sought $28,046 for out-of-court hourly work (701.15 hours at the rate of $40 per hour) and $26,062.75 in overhead expenses (744.65 hours at the rate of $35 per hour). The trial court reduced the fee for out-of-court work to $17,578.54 and the overhead expenses to $13,031.37. Again, the trial court gave no reason for the reductions other than a handwritten note on the fee declaration stating that the reduced amounts represented “60.25% of out of ct. hours.” As with the first fee declaration, the trial court did not explain why it selected 60.25 percent, nor does it appear that the trial court actually used 60.25 percent in reducing the amounts claimed by Hutchinson.
Hutchinson was appointed to represent Banks under § 15-12-21(a), Ala.Code 1975.[3] At the times relevant to this ap *759 peal, § 15-12-21(d), Ala.Code 1975, provided, in relevant part:[4]
“(d) Counsel appointed in cases described in subsections (a), (b), and (c)
... shall be entitled to receive for their services a fee to be approved by the trial court. The amount of the fee shall be based on the number of hours spent by the attorney in working on the case.... Effective October 1, 2000, the amount of the fee shall be based on the number of hours spent by the attorney in working on the case and shall be computed at the rate of sixty dollars ($60) per hour for time expended in court and forty dollars ($40) per hour for time reasonably expended out of court in the preparation of the case. The total fees paid to any one attorney in any one case, from the time of appointment through the trial of the case, including motions for new trial, shall not exceed the following:
“(1) In cases where the original charge is a capital offense or a charge which carries a possible sentence of life without parole, there shall be no limit on the total fee.”
See also § 15-12-6, Ala.Code 1975 (“Compensation of counsel appointed to represent indigent defendants shall be paid by the state in such amounts as otherwise provided by law.”); Wright v. Childree, 972 So.2d 771, 781 (Ala.2006) (“Section 15-12-21(d), as amended in 1999, provides for the payment of office-overhead expenses to lawyers appointed to represent indigent defendants in Alabama”).
As § 15-12-21 (d) indicates, Hutchinson was entitled to receive “forty dollars ($40) per hour for time reasonably expended out of court in the preparation of [Banks’s] case” (emphasis added), and, because Banks was charged with a capital offense, there was no limit on the total number of hours Hutchinson could charge for his out-of-court time so long as, in the trial court’s view, that time was “reasonably expended” preparing the case.
This Court has not established criteria for a trial court to consider in determining whether, under § 15 — 12—21(d), time was “reasonably expended out of court in the preparation of the case.” In evaluating the reasonableness of an attorney fee generally, however, the Supreme Court has stated:
“ ‘The determination of whether an attorney fee is reasonable is within the sound discretion of the trial court and its determination on such an issue will not be disturbed on appeal unless in awarding the fee the trial court exceeded that discretion. State Bd. of Educ. v. Waldrop, 840 So.2d 893, 896 (Ala.2002); City of Birmingham v. Horn, 810 So.2d 667, 681-82 (Ala.2001); Ex parte Edwards, 601 So.2d 82, 85 (Ala.1992), citing Varner v. Century Fin. Co., 738 F.2d 1143 (11th Cir.1984).
“ ‘This Court has set forth 12 criteria a court might consider when determining the reasonableness of an attorney fee:
“ ‘ “[T]he nature and value of the subject matter of the employment; (2) *760 the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.”
“ ‘Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740, 749 (Ala.1988). These criteria are for purposes of evaluating whether an attorney fee is reasonable; they are not an exhaustive list of specific criteria that must all be met. Beal Bank v. Schilleci, 896 So.2d 395, 403 (Ala.2004), citing Graddick v. First Farmers & Merchants Nat’l Bank of Troy, 453 So.2d 1305, 1311 (Ala.1984).
“‘We defer to the trial court in an attorney-fee case because we recognize that the trial court, which has presided over the entire litigation, has a superior understanding of the factual questions that must be resolved in an attorney-fee determination. Horn, 810 So.2d at 681-82, citing Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Nevertheless, a trial court’s order regarding an attorney fee must allow for meaningful appellate review by articulating the decisions made, the reasons supporting those decisions, and how it calculated the attorney fee. Horn, 810 So.2d at 682, citing American Civil Liberties Union of Georgia v. Barnes, 168 F.3d 423, 427 (11th Cir.1999); see also Hensley, 461 U.S. at 437, 103 S.Ct. 1933.’ ”
Kiker v. Probate Court of Mobile County, 67 So.3d 865, 867-68 (Ala.2010) (quoting Phamacia Corp. v. McGowan, 915 So.2d 549, 552-53 (Ala.2004) (emphasis added in Kiker)). Of course, not all the above-quoted factors will be relevant in an indigent-defense case. Even so, a court evaluating the reasonableness of a fee in an indigent-defense case should consider those factors that, are relevant under the particular circumstances. In addition to those factors, the possible punishment that could be imposed on the indigent defendant should be considered in evaluating the reasonableness of a fee in an indigent-defense case. See, e.g., Hulse v. Wilfvat, 306 N.W.2d 707, 711 (Iowa 1981); Duffy v. Circuit Court for the Seventh Judicial Circuit, 2004 S.D. 19, 676 N.W.2d 126, 134 (2004).
In Kiker, supra, the Alabama Supreme Court remanded the cause before it because the Mobile County Probate Court had failed to articulate its reasons for the attorney fee it had awarded in that case. The Alabama Supreme Court held:
“The probate court may, in its discretion, reduce an agreed-upon attorney fee if it concludes that the attorney fee is unreasonable. See Ex parte Peck, 572 So.2d 427, 429 (Ala.1990). However, without a sufficient explanation by the probate court regarding its consideration of the 12 factors outlined in Pharmacia [Corp. v. McGowan, 915 So.2d 549, 552-53 (Ala.2004),] and how it calculated the attorney fees, we cannot ascertain whether the probate court exceeded its discretion in awarding those fees.”
Kiker, 67 So.3d at 868 (emphasis added). Consequently, the Alabama Supreme Court remanded the cause for the probate court to enter an order explaining its decision. In the present case, such a remand is necessary before we may review the *761 circuit court’s reduction of the fees claimed by Hutchinson.

Conclusion

Like the Alabama Supreme Court in Kiker, we cannot determine in the present case whether the trial court exceeded its discretion in reducing the fees claimed by Hutchinson. Therefore, we remand this cause to the circuit court for the entry of an order explaining its decision and articulating its reasons for that decision. Due return shall be made to this Court within 42 days of the date of this opinion.
REMANDED WITH INSTRUCTIONS.
WELCH, P.J., and WTNDOM, KELLUM, and BURKE, JJ., concur.

On Return to Remand

JOINER, Judge.
Joseph W. Hutchinson III appeals two orders of the Choctaw Circuit Court approving only part of the attorney-fee declarations Hutchinson submitted for his representation of Medell Banks, Jr., in a capital-murder case. We reverse and remand.

Facts and Procedural History

This appeal was transferred to this Court by the Supreme Court. Hutchinson v. State, 66 So.3d 220 (Ala.2010) (“Hutchinson I”).[1] On September 30, 2011, we remanded this matter to the Choctaw Circuit Court for that court to enter an order explaining its decision to approve only part of the attorney-fee declarations submitted by Hutchinson. See Hutchinson v. State, 111 So.3d 754 (Ala.Crim.App.2011) (“Hutchinson II”). We specifically instructed the circuit court to consider those factors listed in Pharmacia Corp. v. McGowan, 915 So,2d 549, 552-53 (Ala.2004), that it deemed relevant in evaluating the reasonableness of Hutchinson’s attorney-fee declarations. We also stated that the circuit court should consider “the possible punishment that could be imposed on the indigent defendant.” Hutchinson II, 111 So.3d at 760.
On remand, the circuit court entered the following order:
“The ease of State of Alabama versus [Medell] Banks concluded with a negotiated plea to a lesser charge, on January 10th, 2003. On December 12, 2008, nearly six years later, Mr. Hutchinson filed his bill. By that time Judge McPhearson, who had presided over the Banks case, had retired. His successor. Judge Baxter, was within a month of retirement and took no action on the fee petition. Judge McCorquodale was appointed to Judge Baxter’s place, and recused from hearing Mr. Hutchinson’s fee petition. It then fell to me to determine the reasonableness of Mr. Hutchinson’s fee petition. After consideration of all of the legally mandated factors, I concluded that the amount claimed should be reduced. The reasons are as follows:
“1. Mr. Hutchinson was not timely in filing his fee petition, and offered no acceptable reason for his lack of diligence. If Mr. Hutchinson had filed promptly, the Judge that presided over the ease, and who would have been in the best position to evaluate the reasonableness of the hours claimed, would have ruled on the fee petition.
“2. Mr. Hutchinson committed two ethical violations. First, his wife was *762 employed by the Choctaw County Commission to handle accounting and billing for the Solid Waste Program. Mr. Hutchinson had her include with the Solid Waste bills, a mail out soliciting funds for Medal Banks’ defense. These were mailed out at the county’s expense, without any authorization by the Court or the County Commission.
“Second, Mr. Hutchinson took a medical report to Judge McPhearson’s house, and engaged in an ex parte conversation with him, during the pendency of the Banks case, without the knowledge of the State.
“3. Mr. Hutchinson’s testimony as to the out of court hours worked was not credible. In any event, the hours claimed for out of Court work are in excess of a reasonable amount. Even taking into account the complexity of the Banks case, and the favorable result reached, I still conclude that the hours claimed for out of Court work and office overhead expense were excessive. Mr. Hutchinson has a history, reaching back over twenty years, of being consistently far higher in his billing for appointed work than any other attorney in Choctaw County.
“In setting Mr. Hutchinson’s fee, I considered the factors set out above and based my decision on the hours claimed by co-counsel, Mr. Evans. I then increased the amounts in consideration of Mr. Hutchinson having been the lead attorney.”
(Order on Return to Remand, pp. 1-2.)

Standard of Review

“ ‘The determination of whether an attorney fee is reasonable is within the sound discretion of the trial court and its determination on such an issue will not be disturbed on appeal unless in awarding the fee the trial court exceeded that discretion. State Bd. of Educ. v. Waldrop, 840 So.2d 893, 896 (Ala.2002); City of Birmingham v. Horn, 810 So.2d 667, 681-82 (Ala.2001); Ex parte Edwards, 601 So.2d 82, 85 (Ala.1992), citing Varner v. Century Fin. Co., 738 F.2d 1143 (11th Cir.1984).
“ ‘This Court has set forth 12 criteria a court might consider when determining the reasonableness of an attorney fee:
“ ‘ “[T]he nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.”
“ ‘Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740, 749 (Ala.1988). These criteria are for purposes of evaluating whether an attorney fee is reasonable; they are not an exhaustive list of specific criteria that must all be met. Beal Bank v. Schilleci, 896 So.2d 395, 403 (Ala.2004), citing Graddick v. First Farmers & Merchants Nat’l Bank of Troy, 453 So.2d 1305, 1311 (Ala.1984).’ ”
Kiker v. Probate Court of Mobile Cnty., 67 So.3d 865, 867-68 (Ala.2010) (quoting Pharmacia Corp. v. McGowan, 915 So.2d 549, 552-53 (Ala.2004)).
“[N]ot all the above-quoted factors will be relevant in an indigent-defense case. Even so, a court evaluating the reasonableness of a fee in an indigent- *763 defense case should consider those factors that are relevant under the particular circumstances. In addition to those factors, the possible punishment that could be imposed on the indigent defendant should be considered in, evaluating the reasonableness of a fee in an indigent-defense case. See, e.g., Hulse v. Wilfvat, 306 N.W.2d 707, 711 (Iowa 1981); Duffy v. Circuit Court for the Seventh Judicial Circuit, 2004 S.D. 19, 676 N.W.2d 126, 134 (2004).”
Hutchinson II, 111 So.3d at 760.
Additionally,
“ ‘We defer to the trial court in an attorney-fee case because we recognize that the trial court, which has presided over the entire litigation, has a superior understanding of the factual questions that must be resolved in an attorney-fee determination. Horn, 810 So.2d at 681-82, citing Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Nevertheless, a trial court’s order regarding an attorney fee must allow for meaningful appellate review by articulating the decisions made, the reasons supporting those decisions, and how it calculated the attorney fee. Horn, 810 So.2d at 682, citing American Civil Liberties Union of Georgia v. Barnes, 168 F.3d 423, 427 (11th Cir.1999); see also Hensley, 461 U.S. at 437, 103 S.Ct. 1933.’ ”
Kiker, 67 So.3d at 868 (quoting Pharmacia Corp., 915 So.2d at 553 (Ala.2004)).

■Discussion

I.
Initially we address whether we have jurisdiction to hear Hutchinson’s appeal. The dissenting opinion asserts that Hutchinson’s exclusive remedy was to file a petition for the writ of mandamus.[2] The dissenting opinion states:
“[This appeal] is not an appeal from a ‘misdemeanor[ ], ... habeas corpus[, a] felonfy], [or a] post conviction writ[ ] in [a] criminal case[ ].’ § 12-3-9, Ala.Code 1975. Thus, I do not believe that the legislature has granted this Court the authority to hear the cause on direct appeal. See Baker v. State, 877 So.2d 639, 641 (Ala.Crim.App.2003) (recognizing that § 12-3-9, Ala.Code 1975, establishes the jurisdiction of this Court to hear a direct appeal). However, as Justice Johnstone explained in his special writing in Ex parte Smith, 794 So.2d 1089, 1093 (Ala.2001), this Court does have jurisdiction to entertain a petition for a writ of mandamus relating to the circuit court’s action on an attorney-fee declaration. As Justice Johnstone aptly stated:
“ ‘This jurisdiction was conferred by Amendment 328, § 6.03, Alabama Constitution of 1901, [now § 141, Ala. Const. 1901 (Off. Recomp.) ], which provides, in pertinent part, that the Court of Criminal Appeals has original jurisdiction “in the issuance and determination of writs of ... mandamus in relation to matters in which said court has appellate jurisdiction.” This capital murder case was a “matter[ ] in which said court has appellate jurisdiction,” and the dispute over this circuit court production order at issue was “in relation to” that very matter.’
*764 “Ex parte Smith, 794 So.2d at 1093. Stated differently, Hutchinson’s challenge to the circuit court’s reduction of the amount of money he should be paid for his representation of an indigent, criminal defendant relates to the felony prosecution of his client, but is not an appeal of a ‘misdemeanor ... [or] felon[y]’ conviction or sentence. § 12-3-9, Ala.Code 1975. Accordingly, Hutchinson should have filed a petition for a writ of mandamus seeking an order from this Court directing the circuit court to approve his attorney-fee declaration in full.”
111 So.3d at 768 (Windom, P.J., dissenting).
In its opinion transferring Hutchinson’s appeal to this Court, Hutchinson I, 66 So.3d 220, the Alabama Supreme Court expressly adopted an extensive portion of Justice Murdock’s special writing in State v. Isbell, 985 So.2d 446 (Ala.2007). The Supreme Court’s adoption of Justice Mur-dock’s special writing in Isbell includes language that addresses the notion that, based on Justice Johnstone’s writing in Smith, a petition for the writ of mandamus is the exclusive means for Hutchinson to obtain .appellate review of the order in this case. Further, Justice Murdock’s writing in Isbell, as adopted by the Supreme Court in Hutchinson I, establishes that § 12-3-9, Ala.Code 1975, confers jurisdiction on this Court to hear Hutchinson’s appeal in the present case.
Specifically, after quoting the same paragraph of Justice Johnstone’s writing in Smith that is quoted above, Justice Murdock’s writing includes a footnote, which the Supreme Court also quoted and adopted in Hutchinson I. In that footnote, Justice Murdock stated:
“ ‘As between a mandamus proceeding in the Court of Criminal Appeals and a collateral, declaratory-judgment proceeding in the same circuit court that entered the original fee award, I certainly believe Justice Johnstone was correct in his conclusion that a mandamus proceeding in the Court of Criminal Appeals was the only proceeding that could be considered appropriate. I would go a step further, however, and ask whether the appropriate vehicle for appellate review would be an appeal to the Court of Criminal Appeals, rather than a mandamus proceeding.’ ”
Hutchinson I, 66 So.3d at 230 n.4 (quoting Isbell, 985 So.2d at 455 n. 4 (Murdock, J., concurring in the result) (emphasis added)). Justice Murdock then answered the question by explaining why § 12-3-9, Ala. Code 1975, confers jurisdiction over an appeal of a circuit court’s final order on an attorney-fee declaration in a criminal case:
“ ‘It is well established that an order awarding attorney fees in relation to an underlying case is, itself, an appealable judgment. Niezer v. SouthTrust Bank, 887 So.2d 919, 923 (Ala.Civ.App.2004) (“[A]ttorney-fee matters are separate and distinct from matters going to the merits of a dispute and ... an appeal may be taken from a final judgment as to either aspect of a case.”); Hunt v. NationsCredit Fin. Servs. Corp., 902 So.2d 75, 81 (Ala.Civ.App.2004) (concluding that Niezer stands for the proposition that an “order denying an award of attorney fees that is ancillary to an earlier decision and has completely adjudicated all matters in controversy between the parties is immediately appealable” and is consistent with the United States Supreme Court decision in Budinich v. Becton Dickinson & Co., 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988)); Sparks v. Parker, 368 So.2d 528 (Ala.1979) (reviewing a trial court’s order establishing and administering Calhoun County’s indigent-defense system by *765 way of an appeal); C.A. Wright et al., Federal Practice and Procedure § 3915.6 (2d ed. 1992); Clark v. Johnson, 278 F.3d 459 (5th Cir.2002) (holding that an order denying compensation under the federal Criminal Justice Act for services performed before a state clemency board by counsel appointed to represent a state prisoner was final and appealable, despite the fact that the order was separate from the merits of the habeas corpus proceeding). Cf. Sprague v. Ticonic Nat’l Bank, 307 U.S. 161, 170, 59 S.Ct. 777, 83 L.Ed. 1184 (1939) (giving certiorari review to an attorney-fee order appealed to the lower appellate court and observing that a petition for an attorney fee in equity is “an independent proceeding supplemental to the original proceeding”). The delegation in § 12-3-9[ Ala.Code 1975,] to the Court of Criminal Appeals of jurisdiction over criminal cases involving misdemeanors and felonies necessarily and logically includes jurisdiction to review any appealable order añsing out of or relating to such a case.’ ”
Hutchinson I, 66 So.3d at 230 n.4 (quoting Isbell, 985 So.2d at 455 n. 4 (Murdock, J., concurring in the result) (emphasis added)). Thus, based on the Alabama Supreme Court’s decision in Hutchinson I, we conclude that we have jurisdiction to hear Hutchinson’s appeal in this case.
II.
In our opinion in Hutchinson II, we included the following summary of the fee declarations in this case and the trial court’s reduction of the amounts Hutchinson requested in those declarations:
“Hutchinson submitted two fee declarations to the trial court: The first was for work Hutchinson performed in the trial court before the appeal to this Court, and the second was for work completed after Banks filed his appeal. Each fee declaration included detailed itemiza-tions of the amounts Hutchinson claimed.
“Hutchinson’s first fee declaration sought the following amounts:
“— $1,635 in in-court expenses, representing 27.25 hours at $60 an hour;
“— $18,557.60 in out-of-court expenses, representing 463.94 hours at $40 an hour;
“— $3,803.95 in extraordinary expenses approved in advance by the trial court; and
“— $17,191.65 in overhead expenses, representing 491.19 hours at $35 an hour.
“The second fee declaration sought the following amounts:
“— $2,610 in in-court expenses, representing 43.50 hours at $60 an hour;
“— $28,046 in out-of-court expenses, representing 701.15 hours at $40 an hour; extraordinary expenses approved in advance by the court of $5,143.15; and overhead expenses of $26,062.75, representing 744.65 hours at $35 an hour.
“Because the judge who had presided over Banks’s criminal proceedings had retired, the fee declarations were assigned to a new judge. An evidentiary hearing was held on March 9, 2009. Hutchinson testified at the hearing, as did attorney Jim Evans, who served as appointed cocounsel with Hutchinson during Banks’s proceedings, and attorney Spencer Walker, who had served as appointed counsel for Banks’s wife Victoria.
“On September 2, 2009, the trial court entered separate orders on the fee declarations. On each fee declaration, the *766 trial court approved Hutchinson’s litigation expenses and the amounts Hutchinson sought for in-court time. On both fee declarations, however, the trial court reduced the amounts Hutchinson sought for out-of-court time and for office overhead expenses.
“In the first fee declaration, Hutchinson sought $18,557.60 for out-of-court work (463.94 hours at the rate of $40 per hour) and overhead expenses of $17,191.65 (491.19 hours at the rate of $35 per hour). The trial court reduced the fee for out-of-court work, to $11,597.46 and the overhead expenses to $8,595.82. The trial court gave no explanation for the reductions, other than a handwritten note on the fee declaration stating that the reduced amounts represented ‘39.75% of out of ct. hours.’ The trial court did not explain, however, why it selected 39.75 as a percentage to reduce the out-of-court hourly fee and the overhead expenses. Moreover, it does not appear that the trial court actually reduced either of those expenses by 39.75 percent.
“In the second fee declaration, Hutchinson sought $28,046 for out-of-court hourly work (701.15 hours at the rate of $40 per hour) and $26,062.75 in overhead expenses (744.65 hours at the rate of $35 per hour). The trial court reduced the fee for out-of-court work to $17,578.54 and the overhead expenses to $13,031.37. Again, the trial court gave no reason for the reductions other than a handwritten note on the fee declaration stating that the reduced amounts represented ‘60.25% of out of ct. hours.’ As with the first fee declaration, the trial court did not explain why it selected 60.25 percent, nor does it appear that the trial court actually used 60.25 percent in reducing the amounts claimed by Hutchinson.”
Hutchinson II, 111 So.3d at 758.
As noted above, in his order on return to remand, Judge Scurlock provided three reasons for his reduction of the fee-declaration amounts. We discuss each of those reasons in turn, and we hold that Judge Scurlock exceeded his discretion in reducing the fee-declaration amounts.
First, Judge Scurlock stated that Hutchinson submitted his fee declarations in an untimely manner, thereby preventing the judge who had originally presided over the ease from ruling on the fee declarations. According to Judge Scurlock, Hutchinson waited to submit his fee declarations until almost six years after the conclusion of Banks’s case.[3]
Section 15-12-21(e), Ala.Code 1975, requires that a fee declaration be submitted within a “reasonable time” after the conclusion of the matter. There is nothing in the materials before us to indicate why Hutchinson waited almost six years to submit his fee declarations. We note, however, that Judge Scurlock conducted a full evidentiary hearing on Hutchinson’s fee declarations; at that hearing, there was no question regarding the timeliness of the filing of the declarations. Consequently, we are not persuaded that Hutchinson’s delay in submitting the fee declarations necessarily justified a reduction to those fee declarations.
The second reason cited by Judge Scurlock were ethical violations allegedly committed by Hutchinson. Two specific alleged violations were cited. As to the first allegation — that Hutchinson instructed his wife to mail, at the county’s expense, requests for funds for Banks’s de *767 fense — nothing in the record before us supports this allegation.
The second alleged ethical violation— that “Hutchinson took a medical report[4] to Judge McPhearson’s house, and engaged in an ex parte conversation with him, during the pendency of the Banks case, without the knowledge of the State” — was addressed briefly at the evi-dentiary hearing on the fee declarations. In response to questioning from Judge Scurlock about the ex parte communication, Hutchinson first testified that he took the results and showed them to Judge MePhearson; Hutchinson then attempted to “clarify” his response and stated that he “told [Judge MePhearson] that there was a test result from Birmingham, and we wanted a hearing as soon as possible.” (R. 50-51.) Although we do not condone Hutchinson’s conduct, the Alabama State Bar and ultimately the Alabama Supreme Court — not the Choctaw Circuit Court in an action to recover an indigent-defense attorney fee — are charged with determining whether an attorney has committed an ethical violation and, if so, the appropriate sanction to impose. The materials before us do not indicate that Hutchinson was charged with or convicted of an ethical violation with regard to the incident cited by Judge Scurlock. Accordingly, this alleged ethical violation was not an appropriate basis upon which to reduce Hutchinson’s fee declaration.
The third reason Judge Scurlock cited in his order explaining the reduction in fees was that he found that Hutchinson’s testimony regarding the number of hours he worked was “not credible” and the number of hours claimed for out-of-court work was unreasonable. In support of this conclusion, Judge Scurlock stated that “Hutchinson has a history, reaching back over twenty years, of being consistently far higher in his billing for appointed work than any other attorney in Choctaw County.” We note that one of the factors for determining the reasonableness of an attorney fee is “the professional experience and reputation of the attorney.” Kiker, 67 So.3d at 867. In this case, however, there is nothing in the materials before us to support Judge Scurlock’s assertion. Moreover, Hutchinson presented extensive documentation, including numerous itemi-zations, in support of his fee declarations. Additionally, at the evidentiary hearing on the fee declarations, two attorneys testified that Hutchinson’s fee declarations were reasonable. Nothing in the record before us contradicts or calls into question the evidence Hutchinson offered in support of his fee declarations. Consequently, there was no evidentiary basis upon which Judge Scurlock could have reduced Hutchinson’s fee declarations because of Hutchinson’s alleged reputation for billing too much in indigent-defense cases.
Finally, Judge Scurlock stated the following as to the formula he used for reducing Hutchinson’s fee: “I considered the factors set out above and based my decision on the hours claimed by co-counsel, Mr. Evans. I then increased the amounts in consideration of Mr. Hutchinson having been the lead attorney.” In our opinion remanding this case, we noted that Judge Scurlock had not explained why he selected the percentages he claimed to have used in reducing Hutchinson’s fee declarations and that it did not appear that he actually used those percentages in reduc *768 ing the amounts claimed by Hutchinson. Unfortunately, the order returned to us on remand does not provide a sufficient explanation for the percentage Judge Scurlock formulated, nor does it address why that percentage was not actually used in reducing the amounts claimed by Hutchinson.
There is no evidence in the record to support the circuit court’s reduction of the amounts Hutchinson requested, and the reduction of those amounts was arbitrary. Indeed, the uncontradicted evidence before the circuit court supported the amounts Hutchinson requested. Accordingly, the circuit court exceeded its discretion in not granting Hutchinson’s request for attorney fees in Banks’s case. Love v. Hall, 940 So.2d 297, 299 (Ala.Civ.App.2006) (“[A] trial court’s judgment awarding an attorney fee based on ore tenus evidence is to be presumed correct, and ... that court’s findings will not be disturbed on appeal unless they are palpably wrong, manifestly unjust, or without supporting evidence, see Anderson v. Lee, 621 So.2d 1305, 1307 (Ala.1993).” (Emphasis added.)).
The judgment of the circuit court reducing the amounts claimed by Hutchinson is reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
WELCH, KELLUM, and BURKE, JJ., concur.
WINDOM, P.J., dissents, with opinion.

. This case was previously assigned to another judge on this Court; it was reassigned to Judge Joiner on March 1, 2011.

. In support of this Court's decision to transfer the appeal, the order cited Ex parte Galanos, 796 So.2d 390 (Ala.2000), and Ex parte McNabb, 879 So.2d 1166 (AIa.2003). In its opinion transferring the appeal back to this Court, however, the Alabama Supreme Court overruled Galanos and McNabb and held:
"The Court of Criminal Appeals is the appropriate appellate court to review attorney-fee declarations following a criminal proceeding involving an indigent defendant. Awarding attorney fees 'in relation to’ a criminal case is a matter for the Court of Criminal Appeals. Art. VI, § 141, Ala. Const. 1901 (Off. Recomp.) (previously Amendment No. 328, § 6.03, Ala. Const. 1901). As Justice Murdock noted [in his special writing in State v. Isbell, 985 So.2d 446 (Ala.2007) ], when it comes to a matter relating to a criminal case, whether it be an issue arising before trial, such as one regarding discovery, or an issue arising only after the entry of a final judgment, such as one regarding a criminal defense counsel’s fee application, it is the Court of Criminal Appeals that, in all common sense and logic, should decide the question. It is the Court of Criminal Appeals that has the experience and expertise in criminal matters to make an informed judgment as to the infinite variety of questions that potentially can arise in relation to criminal proceedings.”
Hutchinson v. State, 66 So.3d 220, 230 (Ala.2010). Upon transfer from the Supreme Court, this appeal was assigned case no. CR-10-0595.

. Section 15 — 12—21 (a), Ala.Code 1975, provides:
“If it appears to the trial court that a defendant is entitled to counsel, that the defendant does not expressly waive the right to assistance of counsel, and that the defendant is not able financially or otherwise to obtain the assistance of counsel, the court shall appoint counsel to represent and assist the defendant. It shall be the duty of *759 the appointed counsel, as an officer of the court and as a member of the bar, to represent and assist the defendant to the best of his or her ability.”

. The legislature recently amended many of the statutory provisions relating to the representation of indigent defendants, including § 15-12-21, Ala.Code 1975. See Act No. 2011-678, Ala. Acts 2011. Those amendments are effective June 14, 2011, "but [do] not affect the compensation arrangement for any indigent defense representation ongoing or unpaid as of [the] effective date.” The statutory provisions discussed in this opinion are those applicable to Hutchinson’s representation of Banks.

. The facts and complex procedural history of this case are set forth in this Court’s September 30, 2011, opinion remanding this matter and will not be repeated here. See Hutchinson v. State, 111 So.3d 754 (Ala.Crim.App.2011).

. In its brief to the Alabama Supreme Court in Hutchinson I, the State's first argument was that Hutchinson's exclusive remedy was to file a petition for the writ of mandamus. (State’s brief in Hutchinson I, pp. 6-7.) The Supreme Court did not expressly state that it was addressing this argument as put forth by the State, but, as discussed below, we think the Supreme Court's analysis in Hutchinson I rejects the notion that a mandamus petition is the exclusive means of review available to Hutchinson.

. In contrast, the case-action summary indicates that Hutchinson's cocounsel submitted his fee declaration less than a month after the conclusion of Banks's case.

. As discussed in this Court’s opinion in Banks v. State, 845 So.2d 9 (Ala.Crim.App.2002), Hutchinson obtained test results that demonstrated that Banks’s wife, Victoria, was incapable of being pregnant at the time that Victoria was allegedly pregnant with the child Banks was accused of killing. See Banks, 845 So.2d at 14-17. The medical report to which Judge Scurlock referred in his order is the report that included those test results.